OLD REPUBLIC INSURANCE COMPANY, Plaintiff,

v.

HANSA WORLD CARGO SERVICE, INC.; Duferco Ltd. (U.S.A.); Ferco Intertrade, Inc.; Duferco, Inc.; Duferco Steel, Inc.; Duferco Trading Corp.; Duferco Steel Sales, Ltd.; Frank Fink; and John Cummings, Defendant.

No. 92 Civ. 0119(DNE).

United States District Court, S.D. New York.

June 1, 1999.

---

Thomas P. Lynch, Lynch Rowin Novack Burnbaum & Crystal, P.C., New York, NY, for Old Republic Ins. Co.

## ORDER

EDELSTEIN, District Judge.

In this diversity action, Plaintiff alleges that Defendants fraudulently schemed to import steel products into the United States without paying anti-dumping[1] and countervailing[2] duties that the United States Customs Service ("U.S. Customs" or "Customs") levied upon the steel. Presently before this Court are the Duferco Defendants', Defendant Fink's, and Defendant Cummings' objections to the Reports and Recommendations that Honorable Leonard Bernikow, United States Magistrate Judge, issued on March 31, 1998 and September 23, 1998. In those Reports, Magistrate Judge Bernikow addressed Defendants' motion to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(6) and 9(b).

### Background

This matter reaches the Court framed as a Rule 12(b)(6) motion. Accordingly, the facts recited herein are drawn predominantly from Plaintiff's amended complaint.

A. Parties:

Plaintiff Old Republic Insurance Company ("ORIC" or "Plaintiff"), a corporation organized under the laws of the Commonwealth of Pennsylvania, has its principal place of business in the Commonwealth of Pennsylvania and is licensed to transact business within the State of New York. *See* Am.Compl. at ¶ 1. The Secretary of the Treasury of the United States has authorized ORIC to issue United States Customs surety bonds. *See id.* Defendant Hansa World Cargo Service, Inc. ("Hansa") is incorporated in Michigan and, during the period relevant to this litigation, maintained its principal place of business in Ohio. *See id.* at ¶ 2.

Until 1982, Defendant Ferco Intertrade, Inc. ("Ferco") was a Delaware corporation authorized to do business in New York. *See id.* at ¶ 4. Plaintiff contends that on July 15, 1982, Ferco became known as Defendant Duferco Ltd. (USA) ("Duferco USA"). *See id.* Duferco USA also was a Delaware corporation authorized to do business in New York. *See id.* at ¶ 3. Plaintiff alleges, however, that in November 1989, Duferco USA filed a Certificate of Termination with the New York Secretary of State but "continued thereafter to conduct business in the County of New York, State of New York." *See id.*

Defendants Duferco, Inc.; Duferco Steel, Inc.; Duferco Properties, Inc.; Duferco Trading Corp.; and Duferco Steel Sales, Inc. all were Delaware corporations, with their respective principal places of business in New York. *See id.* at ¶¶ 5–9.[3] Plaintiff alleges that "prior to April 22, 1988, defendant Duferco Trading Corp. was known as Duferco Properties, Inc." *See id.* at ¶ 8.

---

**1.** " 'Anti-dumping duties' are amounts which are assessed by U.S. Customs based upon a determination by the U.S. Commerce Department that goods are being sold for export to the United States at prices which are less that the cost at which they are sold in the country of origin." Am.Compl. at ¶ 16 n. 2.

**2.** " 'Countervailing duties' are amounts which are assessed by U.S. Customs based upon a determination by the U.S. Commerce Depart-

ment that, as a result of bounties, subsidies or grants bestowed upon the exporter of the goods by the government of the country of exportation, the imported goods enjoy an unfair overall price advantage in the U.S. marketplace." Am.Compl. at ¶ 16 n. 2.

**3.** This Court refers to these Defendants and Defendant Duferco USA collectively as the "Duferco Defendants".

Defendant Frank Fink ("Fink") is alleged to have been a citizen of the State of Ohio at the time of commencement of this lawsuit, and "an officer, director and/or owner of defendant Hansa" at all times relevant to this litigation. *Id.* ¶ 13. Plaintiff contends that Fink "was also a licensed Customhouse Broker, with the authority to issue plaintiff's bonds for the benefit of his customers." *Id.* Defendant John Cummings ("Cummings") is alleged to have been a citizen of the State of California at the time of commencement of this lawsuit, and as "an attorney versed in custom matters," to have worked as "an officer, director and/or owner of defendant Hansa" during the time relevant to this litigation. *Id.* at ¶ 14.[4]

Plaintiff asserts that "one or more of the Duferco defendants are or were alter egos of, and/or successors in interest to, defendant Duferco Ltd. (USA)," and thereby, were the means by which Duferco USA continued to do business after its purported dissolution in 1989. *See id.* at ¶ 11–12. Specifically, Plaintiff asserts that (1) after its alleged termination, Duferco USA maintained offices and a telephone listing in New York, (2) before its own purported dissolution in 1989, Duferco Steel Sales, Inc. was an affiliate of Duferco USA and sold steel products purchased from Duferco USA, (3) Defendants Duferco Steel, Inc. and Duferco Trading Corp. carried on the business of Duferco USA and Duferco Steel Sales, Inc. after their dissolutions, (4) "the same persons acted as officers and/or employees in each of the Duferco ·defendants," and (5) discovery will reveal substantial additional evidence to support Plaintiff's contention. *See id.* at ¶ 12.

**B. Facts:**

At all times pertinent to this litigation, Plaintiff ORIC was authorized by U.S.

Customs to issue bonds in connection with the importation, entry, and ·release of goods into United States commerce. *See id.* at ¶ 17. The bonds, in turn, guaranteed the payment of assessed duties if the importer failed to pay once the entries passed Customs and Customs demanded payment from the importer. *See id.* Beginning in approximately 1980, ORIC authorized Defendant Fink, a duly licensed customhouse broker, to post ORIC's bonds, including bonds that covered anti-dumping and countervailing duties. *See id.* at ¶ 19, 22. Shortly thereafter, Fink and Defendant Cummings organized Defendant Hansa to act as importer of record on behalf of foreign steel manufacturers and/or exporters, including Duferco USA. *See id.* at ¶ 20, 27. ORIC alleges that Fink was aware that it was ORIC's practice to require the posting of collateral to secure ·anti-dumping and countervailing duty bonds. *See id.* at ¶ 23. In fact, beginning in the middle of 1982 and then again in March 1983, ORIC's agents reminded Fink that ORIC required that their bonds be fully collateralized before posting. *See id.*

In late 1983 and early 1984, the United States Commerce Department's ·International Trade Administration ("ITA") publicly announced a preliminary assessment of anti-dumping and· countervailing duties on certain Brazilian steel products. *See id.* at ¶ 24–25. Almost ·immediately after the ITA' 1983 determination, on September 12, 1983, Hansa 'and· Duferco USA entered into a contract ("Hansa/Duferco contract" or the "contract")[5] agreeing that Hansa would serve as importer of record and, in exchange for a fixed fee per metric ton of steel, assume the risk of liability for the possible increased Customs duties on Duferco USA's imported Brazilian steel. *See id.* at ¶ 27–29. The contract indicated

---

4. This Court refers to Defendants Hansa, Fink, and Cummings collectively as the "Hansa Defendants".

5. Defendant Cummings signed the contract, and on information and belief, ORIC alleges

that Defendants Fink and Cummings negotiated the contract. *See id.* at ¶ 27. Further, the contract was negotiated and executed in, and governed by the laws of, New York. *See id.* at Ex. C. at ¶ 9.

that while in the past Duferco USA had reimbursed Hansa for all incurred costs and usually paid Hansa in enough time to permit payment to U.S. Customs, because both Hansa and Duferco USA recognized that anti-dumping or countervailing duties may ultimately be assessed on Brazilian steel, Duferco USA wished to avoid any liability for any imposed duties. *See id.* at ¶ 28–29. The contract, thereby, significantly increased the risk Hansa assumed by acting as Duferco USA's importer of record because Hansa relinquished any right to seek reimbursement from Duferco USA. *See id.* at ¶ 31.

Despite its increased liability for payment of Customs duties, in each posted bond, Hansa represented to ORIC that it would pay any attached duties for which it served as importer of record. *See id.* at ¶ 36. Additionally, Defendant Cummings "specifically represented to [ORIC] that its unnamed 'clients' had sufficient funds to cover the full amount of any anti-dumping or countervailing duties which might ultimately be assessed." *See id.* at ¶ 64. Yet, in 1983 and thereafter, Fink, Hansa's alleged co-owner, posted at least fifty six (56) ORIC bonds without collateral for the importation of Brazilian steel on behalf of Duferco USA, contrary to ORIC's underwriting guidelines and explicit instructions. *See id.* at ¶¶ 34–35. Furthermore, Hansa, although named importer of record on the bonds, had no interest in the imported goods, allegedly had insufficient assets to pay any potentially imposed duties and under the contract, could not look to Duferco USA for reimbursement. *See id.* at ¶¶ 33, 35.

Plaintiff asserts that all parties to the Hansa/Duferco contract, being experienced in customs matters,[6] "knew or should have known that the party that would ultimately pay any duties assessed would be Hansa's

bonding company (Old Republic), and not Hansa," because "it was virtually certain that Hansa would default on its obligations to Old Republic and U.S. Customs." *Id.* at ¶ 32, 36. ORIC explains that the fee that Hansa was to receive under the Hansa/Duferco contract was insufficient for Hansa to pay any anti-dumping or countervailing fees ultimately assessed. *See id.*[7] ORIC further argues that no bonding company aware of the Hansa/Duferco contract

> would have permitted its bonds to be posted on behalf of Hansa, which had no financial stake in the imported merchandise, which had insufficient assets to pay the duties which might be assessed, and which, under its contract with Duferco was excluded from looking to its customer for reimbursement.

*Id.* at ¶ 33. Indeed, ORIC states that it did not discover the existence of the Hansa/Duferco contract until after the initiation of this lawsuit in 1992. *See id.* at ¶ 33.

Between February and October 1988 and between June and September 1989, the United States Department of Commerce assessed anti-dumping and countervailing duties respectively on the imported Brazilian steel. *See id.* at ¶¶ 41–42. U.S. Customs sent a bill for these increased duties to Defendant Hansa, and when Hansa failed to pay these assessed duties, Customs demanded payment from ORIC as surety on the bonds. *See id.* at ¶ 43. ORIC paid the majority of these demands, and as of the date of the amended complaint, March 25, 1997, ORIC paid $2,066,-244.91 and claimed it may have to pay an additional $31,388.27 in liquidated anti-dumping and/or countervailing duties under its bonds for the imported Brazilian steel. *See id.* at ¶¶ 44–45.

---

**6.** ORIC states that "Fink was a Customshouse broker; Cummings was a 'Customs attorney,' or at least claimed knowledge of steel import issues; and Duferco was an experienced importer of steel goods." Am.Compl. at ¶ 32 n. 4.

**7.** The agreed upon fee was two percent (2%) of the cash deposit or bond required to underwrite the release and entry of the subject goods from Customs. *See id.* at ¶ 32.

## C. Procedural History:

On January 8, 1992, ORIC commenced the instant litigation, asserting ten claims for relief against Defendants: (1) reimbursement of the money plus interest that ORIC paid to U.S. Customs on Defendants' behalf, (2) indebtedness of the money paid plus interest; (3) indemnity of the money paid, (4) unjust enrichment of the money paid plus interest, (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") in the execution of Defendants' scheme, (6) conspiracy to violate RICO, (7) intentional misrepresentation on the grounds that Defendants knowingly and falsely represented to ORIC that they would pay any assessed duties on the steel and that they had provided collateral for ORIC's bonds, (8) breach of fiduciary duty against Defendant Fink, (9) injunction forcing Defendants to pay the amounts that U.S. Customs demanded, and (10) declaratory relief for a judicial determination of the parties' respective rights and duties with respect to payment of the claims that U.S. Customs asserted. *See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 170 F.R.D. 361, 369 (S.D.N.Y.1997). On July 24, 1992, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) and for sanctions pursuant to Rule 11. *See id.*

On February 26, 1997, this Court ruled on Defendants' motion to dismiss and for sanctions. *See id.* This Court dismissed *with prejudice* Plaintiff's two claims arising under RICO and claims for injunctive and declaratory relief, and denied Plaintiff's motion for sanctions. *See id.* at 389. This Court also dismissed *without prejudice* Defendants' claims of reimbursement, indebtedness, indemnity, unjust enrichment, and intentional misrepresentation, holding that plaintiff failed to sufficiently state the elements of those claims or to allege facts satisfying those elements. *See id.* at 384–85. This Court granted Plaintiff thirty days to amend these claims in a manner consistent with the February 26, 1997 opinion. *See id.*

On March 25, 1997, Plaintiff filed its amended complaint against Defendants, raising five claims for relief. First, because Hansa was obligated under applicable suretyship law to reimburse Plaintiff for the paid and payable Customs duties, amounting respectively to $2,066,244.91 and $31,388.27, and Duferco USA is Hansa's alleged principal, Plaintiff seeks reimbursement from Hansa and Duferco USA, jointly and severally, for the payment of those duties. *See* Am.Compl. at ¶¶ 46–50. Second, because equity obligates Hansa to indemnify Plaintiff for the paid and payable duties, and Duferco USA is Hansa's alleged principal, Plaintiff seeks indemnification from Hansa and Duferco USA, jointly and severally. *See id.* at ¶¶ 51–55. Third, because Fink breached the fiduciary duty that he owed to ORIC as its licensed customhouse broker when he posted ORIC's bonds, Plaintiff seeks compensatory damages for the duties that it paid and punitive damages in the amount of $5,000,- 000. *See id.* at ¶¶ 56–61. Fourth, because Hansa and Cummings misrepresented to ORIC that Hansa was capable of paying and would pay any assessed duties, Plaintiff seeks compensatory damages from the Hansa Defendants for the duties that it paid and punitive damages in the amount of $5,000,000. *See id.* at ¶¶ 62–67. Fifth, because Hansa's wrongful acts unjustly enriched Duferco USA, Plaintiff seeks recovery of all paid and payable duties. *See id.* at ¶¶ 68–70.

With regard to the claims for reimbursement and indemnification, Plaintiff asserts that Hansa was acting as the agent of Duferco USA, Hansa's undisclosed principal. *See id.* at ¶ 37. ORIC maintains that Duferco USA effectively supervised Hansa with respect to the posting of ORIC's bonds, arguing that Duferco USA exercised complete control over the importation of the steel. *See id.* Furthermore, as noted, Plaintiff also seeks relief on these two claims from the other Duferco Defendants, contending that these other companies acted as "alter egos of, and/or succes-

sor[s] in interest to, defendant Duferco Ltd. (USA)." *Id.* at ¶ 11.

This Court thereafter ordered the Clerk of the Court to refer this case to a magistrate judge for pretrial and initial case management and for dispositive motions. The Clerk of the Court assigned the case to Honorable Leonard Bernikow. Defendants reasserted their motion to dismiss the amended complaint pursuant to Rule 9(b) and/or 12(b)(6). Motion papers from Plaintiff and Defendants followed.

On March 31, 1998 Magistrate Judge Bernikow issued a Report and Recommendation, granting in part and denying in part Defendants' motion to dismiss. *See* Report and Recommendation of Magistrate Judge Leonard Bernikow, March 31, 1998 (the "3/31/98 Report"). Magistrate Judge Bernikow recommended that Plaintiff's claims of reimbursement and indemnification should be dismissed with prejudice. *See id.* at 29. He further recommended that the motion to dismiss ORIC's claims of breach of fiduciary duty against Defendant Fink and of fraud against the Hansa Defendants should be denied. *See id.* at 29–30. Magistrate Judge Bernikow also recommended that this Court find that the complaint should neither be dismissed on venue grounds nor on statute of limitations grounds. *See id.* at 24, 29.

Thereafter, by letter dated April 8, 1998, which Magistrate Judge Bernikow construed as a Local Civ.R. 6.3 motion, Plaintiff sought reconsideration of the recommendation to dismiss the claims for reimbursement and indemnification. *See*

Report and Recommendation of Magistrate Judge Leonard Bernikow, September 23, 1998 (the "9/23/98 Report"). Pursuant to that letter, Magistrate Judge Bernikow reexamined his former recommendation on those two claims and issued a second Report and Recommendation on September 23, 1998. In that Report, Magistrate Judge Bernikow granted ORIC's motion for reconsideration and withdrew that part of the 3/31/98 Report recommending dismissal of ORIC's claims for reimbursement and indemnification. *See id.* at 32. He also advised that this Court should award Plaintiff discovery limited to Defendants' capacity to be sued and their corporate relationships, particularly with respect to Plaintiff's corporate successor liability theory, noting that Plaintiff's corporate alter ego theory lacked merit. *See id.* at 15–24. Additionally, Magistrate Judge Bernikow suggested that this Court grant Defendants' motion to dismiss with regard to Plaintiff's claim for unjust enrichment. *See id.*[8]

Plaintiff and Defendants submitted written objections to both the 3/31/98 Report and the 9/23/98 Report. In response to the 3/31/98 Report, Defendant Cummings alleged that the statute of limitations bars Plaintiff's fraud claim and that ORIC failed to plead fraud against him with specificity. *See* Memorandum of Law of Defendant John P. Cummings in Supp. of Motion of Objection to the Report and Recommendation of Magistrate Judge Leonard Bernikow, April 20, 1998 ("Cummings Mem.").[9] Defendant Cummings let-

---

8. On November 2, 1998, Magistrate Judge Bernikow issued an order addressing the Duferco Defendants' motion for reconsideration, pursuant to Local Rule 6.3, of that portion of the 9/23/98 Report that found sufficient facts alleging a principal/agent relationship between Duferco USA and Hansa. Magistrate Bernikow held that the Duferco Defendants failed to meet the rigorous standard to necessitate his reconsideration of those parts of the 9/23/98 Report. *See* Order of November 2, 1998, at 2. He did, however, "[i]n the interest of clarity" address the essence of their arguments. *Id.*

9. While Magistrate Judge Bernikow stated that the parties should file their objections by April 17, 1998, Rule 6(e) provides that when a party receives a notice or other paper by mail, three days shall be added to the time by which the party must act in response. Here, Magistrate Bernikow stated that copies of the 3/31/98 Report were mailed to the parties, and therefore, all parties had until April 20, 1998 to file their objections. *See* 3/31/98 Report at 30. Accordingly, Defendant Cummings' objections of April 20, 1998 were timely.

ter in furtherance of his objections, dated April 22, 1998, was untimely, and this Court will not consider it. Defendant Fink, in answer to the 3/31/98 Report, similarly asserted that the statute of limitations bars Plaintiff's fraud claim and that ORIC failed to plead fraud against him with specificity. *See* Notice of Motion of Defendant Frank Fink in Resp. to Objections of Plaintiff and Defendant Cummings, April 30, 1998 ("Fink Mem."). Fink also argued that venue is improper and that he did not breach his fiduciary duty to ORIC. *See id.*

After the issuance of the 9/23/98 Report, the Duferco Defendants provided objections maintaining that no facts support Plaintiff's theories of agency, corporate successor liability, or corporate alter ego liability. *See* Duferco Mem. Plaintiff's only objections regarded Magistrate Judge Bernikow's original recommendation to dismiss ORIC'S claims of reimbursement and indemnification. Because the 9/23/98 Report, reversing those determinations, has rendered Plaintiff's objections moot, this Court need not consider them.

### Discussion

This Court now turns to the objections to the 3/31/98 Report and the 9/23/98 Report. Before resolving these issues, this Court will first set forth the legal standards that govern the instant opinion and order.

### I. Relevant Legal Standards:

The appropriate legal standards for purposes of this Opinion and Order are those that control: (1) a district court's review of a magistrate judge's recommendation and (2) a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). This Court will review each of these standards individually. Furthermore, because this litigation arose under this Court's diversity jurisdiction, this Court applies the substantive law

of the forum state, New York. *See Old Republic*, 170 F.R.D. at 375 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

### A. Standard for Reviewing A Magistrate Judge's Recommendations

Statute empowers magistrate judges to preside over pretrial matters on a district judge's appointment. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72. Where, as here, a Magistrate Judge is "assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party ... [t]he magistrate judge shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact where appropriate." Fed.R.Civ.P. 72(b).

Under Rule 72(b) and 28 U.S.C. § 636(b)(1)(A), a district court evaluating a magistrate judge's recommendation is permitted to adopt those portions of the recommendation to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed. R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997) (citations omitted); *aff'd*, 136 F.3d 313 (2d Cir.); *cert. denied*, —— U.S. ——, 119 S.Ct. 448, 142 L.Ed.2d 402 (1998). Where a party makes a "specific written objection" within "[ten] days after being served with a copy of the [magistrate judge's] recommended disposition," Fed.R.Civ.P. 72(b); the district court is required to make a de novo determination regarding those parts of the report. *See United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424; *Greene*, 956 F.Supp. at 513 (citations omitted).[10]

The term " 'de novo determination' has an accepted meaning in the law.

---

**10.** In this case, Magistrate Judge Bernikow permitted the parties to file objections to the 3/31/98 Report up to and including April 17, 1998, affording the parties more time to submit objections than the ten days provided for in the statute. *See* 3/31/98 Report at 30.

It means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy." *Raddatz*, 447 U.S. at 690, 100 S.Ct. 2406 (Stewart, J., dissenting); *Greene*, 956 F.Supp. at 514 (citations omitted). Therefore, employing a de novo review, a district court must make a "fresh consideration" of the magistrate judge's conclusions and apply "no presumption of validity . . . to the magistrate's findings or recommendations." 14 James Wm. Moore Et Al., Moore's Federal Practice § 72.11[2][a] at 72–44 (3d ed.1997). If the district court disagrees with the magistrate judge's proposals, or any part of them, "[t]he district judge is free to substitute his or her own view for that of the magistrate judge without making any threshold finding." *Id.* at 72–44 to 72–45. Further, while the district court is not required to take additional evidence regarding a party's objections to the magistrate judge's recommendations, it is required to review the record of the proceedings before the magistrate judge. *See id.* Thus, in making its determination, "[t]he district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b).

### B. Rule 12(b)(6) Standard

In reviewing the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein. *See* Fed.R.Civ.P. 12(b)(6); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). "[A] district court must limit itself to facts stated in the complaint or in documents attached to the

complaint as exhibits or incorporated in the complaint by reference." *Kramer*, 937 F.2d at 773; *accord Kopec v. Coughlin III*, 922 F.2d 152, 155–56 (2d Cir.1991); *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988).[11] If a court wishes to consider material outside the pleadings, it must convert the motion to dismiss into one for summary judgment under Rule 56. *See Kramer*, 937 F.2d at 773; *Kopec*, 922 F.2d at 155–56; *Fonte*, 848 F.2d at 25.

The Second Circuit has stated that the court's function is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *accord Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Moreover, in evaluating whether a complaint will withstand a Rule 12(b)(6) motion, a court must assume the truth of plaintiff's "well-pleaded allegations." *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). The court also must read the complaint generously and draw reasonable inferences in favor of the pleader. *See LaBounty*, 933 F.2d at 123. A court will not dismiss a complaint unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991).

---

11. Because ORIC attached the Hansa/Duferco contract to its amended complaint, this Court will consider it.

II. Objections:

■ This Court is required to undertake a de novo review of Magistrate Judge Bernikow's recommendations only with respect to those causes of action to which the parties submitted written objections. *See* Fed.R.Civ.P. 72(b); *Raddatz,* 447 U.S. at 676, 100 S.Ct. 2406. This Court may adopt the remainder of the Reports and Recommendations if not "clearly erroneous." *Thomas* 474 U.S. at 149, 106 S.Ct. 466.

A. Venue Dismissal

Defendant Fink argues that this Court should dismiss this case because ORIC improperly filed in New York, or in the alternative, transfer this case to the Northern District of Ohio. *See* Fink Mem. at Ex. A.

28 U.S.C. § 1391(a)(2), which governs venue, states:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred....

28 U.S.C. § 1391(a)(2).

■ It is undisputed that a substantial part of the events or omissions pertaining to the instant claims occurred in New York. *See* 3/31/98 Report at 23. ORIC's claims rely greatly on the Hansa/Duferco contract, which was negotiated and executed in, and governed by the laws of, New York. *See* Am.Compl. at Ex. C. at ¶ 9. Additionally, ORIC is licensed to do business in and the Duferco Defendants have their principal places of business in New York. *See id.* at ¶¶ 1, 5–9. Thus, ORIC's choice of venue was not inappropriate.

■ 28 U.S.C. § 1404(a), which governs a transfer of forum, provides:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil ac-

tion to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The burden is on Defendant Fink to demonstrate to this Court that a change of forum is necessary. *See Anglo Am. Ins. Group, P.L.C. v. CalFed Inc., XCF,* 916 F.Supp. 1324, 1327 (S.D.N.Y.1996). Fink must establish that "(1) the plaintiff could have brought the case initially in the proposed transferee forum; and (2) the transfer would promote the convenience of the parties and witnesses and would be in the interests of justice." *Howard v. Four Seasons Hotel Ltd.,* 96 Civ. 4587, 1997 WL 107633, at \* 1 (S.D.N.Y. March 10, 1997) (citations omitted).

■ Here, Defendant Hansa has its principal place of business in Ohio and Defendant Fink is a citizen of Ohio. *See* Am.Compl. at ¶¶ 2, 13. Thus, it is arguable that ORIC could have originally filed this case in the Northern District of Ohio. Still, while ORIC could have feasibly filed this case in Ohio, transferring the case to Ohio does not serve the convenience of the parties. ORIC is based in Philadelphia; Defendant Cummings resides in California; the Duferco Defendants principally conduct business in New York. It appears as if a transfer would only accommodate Defendants Hansa and Fink. Moreover, Fink does not set forth any "interest of justice" argument. Therefore, considering that the decision to transfer an action "lies within the sound discretion of the district court," *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993); *accord Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); this Court finds that Defendant Fink has not satisfied his "heavy burden" for either dismissal or transfer based on venue. *Howard,* 1997 WL 107633, at \*2.

B. Statute of limitations

ORIC asserts a breach of fiduciary duty claim against Defendant Fink and an intentional misrepresentation claim against the Hansa Defendants. *See* Am.Compl. at

¶¶ 56–67. Defendants Fink and Cummings contend, however, that these fraud claims are not timely. *See* Fink Mem. at Ex. A; Cummings Mem. at 7.

■ "While a statute-of-limitations defense may be raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Abdul–Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir.1983) (citation omitted) (cited by *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir.1989)). Thus, if a factual question exists, a court should deny the motion to dismiss based on statute of limitations grounds. Additionally, it is well-settled that state statutes of limitations govern state law claims in federal diversity cases. *See Morse v. Elmira Country Club*, 752 F.2d 35, 37 (2d Cir.1984) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). State law also determines when a diversity action commences for the purpose of tolling a state statute of limitations. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–52, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).

### 1. Statute of Limitations for Breach of Fiduciary Duty

■ New York law does not provide a specific limitations period for breach of fiduciary duty claims. "A claim for breach of fiduciary duty is governed by the underlying concomitant claim...." *Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d 465, 485 (E.D.N.Y.1998). A court should look to the "reality and essence of the action." In re *Argo Communications Corp.*, 134 B.R. 776, 787 (S.D.N.Y.1991). Here, the underlying claim upon which ORIC bases it allegations for breach of fiduciary duty is fraud.

ORIC contends that Defendant Fink, as ORIC's agent with respect to the custody and issuance of the bonds, breached the fiduciary duty he owed to ORIC by: (1) failing to obtain sufficient collateral before issuing ORIC's bonds, contrary to ORIC's guidelines; (2) failing to disclose that Hansa neither owned the imported steel nor had sufficient interest in the imports to act as importer of record; (3) failing to inform ORIC that Hansa neither posted nor intended to post adequate collateral to pay any assessed duties; (4) negotiating and then failing to disclose the details of the Hansa/Duferco contract; and (5) failing to disclose that Hansa had no financial ability to reimburse ORIC for any assessed duties that ORIC might pay under the bonds. *See* Am.Compl. at ¶ 59. It appears as though the gravamen of the claim is constructive fraud. ORIC alleges no intent to deceive, and instead sets forth what seems to be a straightforward constructive fraud claim—that Fink breached his fiduciary duty when he failed to secure the bonds and when he did not disclose certain information to ORIC. It is however, possible that ORIC could establish a claim for breach of fiduciary duty that lies in actual fraud. "Where there is a fiduciary relationship ... the mere failure to disclose facts which one is required to disclose may constitute actual fraud, provided the fiduciary possesses the requisite intent to deceive." *Whitney Holdings, Ltd. v. Givotovsky*, 988 F.Supp. 732, 748 (S.D.N.Y. 1997). Accordingly, this Court will analyze the statute of limitations issue under both a constructive fraud and an actual fraud theory.

■ New York's statute of limitations for constructive fraud is six years, calculated from the time of the commission of the alleged fraud. *See* N.Y.Civ.Prac.L. & R. ("CPLR") § 213(1) (McKinney 1990); *see also Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir.1993); *Wall Street Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 248 (N.Y.A.D.1st Dep't 1999). The alleged fraud at issue here occurred in approximately 1983, when Fink began posting ORIC's bonds without adequate collateral and when Hansa and Duferco USA entered into their contract. *See* Am.Compl. at ¶¶ 27, 34. It was at that point that as

an agent and fiduciary of ORIC, Fink did not comply with ORIC's underwriting guidelines and did not disclose information that he possessed regarding (1) his failure to collateralize the bonds, (2) the increased risk that ORIC may have to make payments to Customs on assessed duties, and (3) the increased risk that Hansa may not reimburse ORIC for any payments made. Therefore, a six-year statute of limitations bars the claim based on a constructive fraud theory if not commenced before some time in 1989. Here, because ORIC did not file until January 1992, a breach of fiduciary duty claim based upon constructive fraud is time barred.

■ For a claim of breach of fiduciary duty that lies in actual fraud, a party must commence an action within either six years of the commission of the fraud or two years from the time that the party discovered or should have discovered the fraud with reasonable diligence,[12] whichever is longer. *See* CPLR §§ 203(g), 213(8); *see also Asbeka Indus. v. Travelers Indemnity Co.*, 831 F.Supp. 74, 80 (E.D.N.Y.1993); *Brodsky*, 684 N.Y.S.2d at 248; *Jefferson v. Flax*, 241 A.D.2d 482, 482, 661 N.Y.S.2d 524 (2d Dep't 1997); *Hoffman v. Cannone*, 206 A.D.2d 740, 740–41, 614 N.Y.S.2d 799 (3d Dep't 1994); *Arrathoon v. East New York Savings Bank*, 169 A.D.2d 804, 805, 565 N.Y.S.2d 172 (2d Dep't 1991). While on the face of CPLR § 213(8) it seems as though New York's statute of limitations for actual fraud is six years from the time the party knew or should have known of the fraud with reasonable diligence, that was not the intention of the New York legislature. *See* Joseph M. McLaughlin, *Practice Commentaries*, C213:8, *in* McKinney's Consolidated Laws of New York Annotated, Book 7B (West1990). CPLR § 213(8) must be read in conjunction with § 208(g), which provides:

where the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years of the actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer.

CPLR § 203(g). Thus, while the "period otherwise provided" by the CPLR for actual fraud, six years, must be calculated from the time of accrual of the fraud, a party may receive a longer period of time to begin an action if two years after the party discovered or should have discovered the fraud with reasonable diligence is greater than the original six-year statute of limitations.

As indicated, the alleged fraud here took place in approximately 1983. The action, therefore, should have been commenced by 1989. Under New York law, however, the discovery rule would afford ORIC two years from the time ORIC discovered the fraud or should have discovered the fraud with some reasonable diligence.

■ Here, ORIC should have known of the fraud, at the latest, by 1989. In February 1988, the United States Department of Commerce began assessing Customs duties. *See* Am.Compl. at ¶ 41. While Customs may have billed Hansa almost immediately for Hansa's default in 1988, it is possible that Customs billed Hansa, waited for payment, and only then billed ORIC. Thus, it is possible that ORIC was unaware of Hansa's default, and thereby Fink's breach of fiduciary duty, until 1989. This, in turn, would permit ORIC to file suit by 1991. Nevertheless, because ORIC first brought suit in January 1992, ORIC's breach of fiduciary duty claim is still time

---

12. "An inquiry as to the time that a plaintiff could, with reasonable diligence, have discovered the fraud ... turns upon whether a person of ordinary intelligence possessed knowledge of facts from which the fraud could be

reasonably inferred." *Ghandour v. Shearson Lehman Bros.*, 213 A.D.2d 304, 305, 624 N.Y.S.2d 390 (1st Dep't 1995) (citations omitted).

barred even if the underlying bases is actual fraud.

To support that it filed suit within the statute of limitations, ORIC maintains that it first learned of the contract in 1992. *See id.* at ¶ 33. Even if this allegation is true, it does not counteract that ORIC should have discovered the fraud by 1989. In 1989, there was ample evidence available to ORIC to indicate to them that they had been defrauded. The contract is merely evidence of that already existing fraud, not the actual fraud itself.

### 2. Statute of Limitations for Intentional Misrepresentation

 Intentional misrepresentation claims are governed by the six-year statute of limitations for actual frauds. *See Asbeka,* 831 F.Supp. at 80. As noted a party must commence an action for actual fraud within either six years of the commission of the fraud or two years from the time that the party discovered or should have discovered the fraud with reasonable diligence, whichever is longer. *See* CPLR §§ 203(g), 213(8); *see also Asbeka,* 831 F.Supp. at 80; *Brodsky,* 684 N.Y.S.2d at 248; *Flax,* 241 A.D.2d at 482, 661 N.Y.S.2d 524; *Cannone,* 206 A.D.2d at 740–41, 614 N.Y.S.2d 799; *Arrathoon,* 169 A.D.2d at 805, 565 N.Y.S.2d 172.

ORIC alleges that by posting the bonds that listed Hansa as the importer of record, the Hansa Defendants represented to ORIC that Hansa intended to pay and was capable of paying any assessed duties. *See* Am.Compl. at ¶ 63. Plaintiff also states that Defendant Cummings specifically told ORIC that Hansa and its clients had ample funds to pay for any Custom's duties. *See id.* at ¶ 64. ORIC maintains that both these representations were false and that the Hansa Defendants knowingly made these representations with an intent to defraud ORIC. *See id.* at ¶ 66.

These alleged intentional misrepresentations occurred in approximately 1983, when Fink, Hansa's alleged co-founder, began posting ORIC bonds, listing Hansa as importer of record. By that point, the Hansa Defendants allegedly knew (1) that Hansa lacked sufficient resources to pay any assessed duties and that it had no intention of paying anyway, and (2) that Hansa had already expressly renounced any right to seek assistance to pay for or reimbursement for payment of any assessed duties from Duferco USA pursuant to the Hansa/Duferco contract.

Under a six-year statute of limitations, computed from the commission of the fraudulent misrepresentation, ORIC had to have brought suit by 1989. Because the latest that ORIC knew or should have known of these alleged misrepresentations is 1989, however, the discovery rule affords ORIC two more years, until 1991, to bring the claim. Here, ORIC did not file its original complaint until January 1992, and therefore, its claim for intentional misrepresentation is time barred under either the six-year statute of limitations or the discovery rule.

### C. Agency

In ORIC's claims for reimbursement and indemnity, ORIC seeks recovery not only from Hansa but also from Duferco USA as Hansa's principal. *See id.* at ¶¶ 37, 48, 50, 54–55. ORIC asserts that Duferco USA acted as Hansa's undisclosed principal with regard to the posting of ORIC's bonds, "exercis[ing] complete control over the importation process." Duferco Mem. at 7. Duferco USA maintains, however, that ORIC cannot articulate an agency theory based on actual authority that would support ORIC's allegations. *See id.* at 15–23. Duferco USA emphatically states that

the Amended complaint is devoid of a single allegation that Duferco expressly granted any authority to, or exercised any control over, defendant Hansa ... which would have empowered Hansa ... to act as Duferco's agent with respect to

the posting of the customs surety bonds that are the subject of this action. Duferco Mem. at 2.

 "Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1(1) (1958); *In re Shulman Transp. Enters.*, 744 F.2d 293, 295 (2d.Cir.1984). Generally, parties establish an agency relationship through "written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Nationwide Life Ins. Co. v. Hearst/ABC–Viacom Entertainment Servs.*, 93 Civ. 2680, 1996 WL 263008, at *7 (S.D.N.Y. May 17, 1996) (quoting Restatement (Second) of Agency § 26 (1958)). If two parties effectuate an agency relationship between themselves, the agent's knowledge is imputed to the principal and the principal becomes responsible for the agent's acts within the scope of the bestowed authority. *See Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F.2d 620, 623 (2d Cir.1989) (citation omitted); *Marine Midland Bank v. John E. Russo Produce Co.*, 50 N.Y.2d 31, 43, 427 N.Y.S.2d 961, 968, 405 N.E.2d 205 (1980); *City of New York v. Lead Indus. Assoc.*, 190 A.D.2d 173, 178, 597 N.Y.S.2d 698, 700 (1st Dep't 1993).

 Furthermore, a principal can be disclosed or undisclosed. An undisclosed principal is a principal whose existence and identity is not revealed to a third party that is transacting business with the undisclosed principal's agent. *See Cohen v. Standard Bank Inv. Corp. (Jersey) Ltd.*, 97 Civ. 3802, 1998 WL 782024, at *6 (S.D.N.Y. Nov.6, 1998) (citing 2A N.Y. Jurisprudence 2d, Agency and Independent Contractors § 348 (1998)). It is settled doctrine that an agent's actions within his prescribed authority binds an undisclosed principal. *See* Restatement (Second) of Agency § 186 (1958). Where a third party has notice that an agent is or may be acting for a principal but does not know the identity of the principal, the principal is "partially disclosed." *See* Restatement (Second) of Agency § 4 (1958). A partially disclosed principal is also responsible for the actions of his agent taken within the agent's authority. *See* Restatement (Second) of Agency §§ 147, 149 (1958).

ORIC alleges that Duferco USA was Hansa's undisclosed principal. *See* Am. Compl. at ¶ 37. ORIC, however, also contends that Defendant Cummings represented that Hansa's unnamed clients had adequate funds to provide for any attached duties. *See id.* at ¶ 64. Duferco USA, therefore, may have been Hansa's partially disclosed principal.

 New York courts have recognized that the question of the existence and scope of an agency relationship is a factual issue that a court cannot properly adjudicate on a motion to dismiss. *See Heredia v. United States*, 887 F.Supp. 77, 80 (S.D.N.Y.1995); *Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142, 147, 606 N.Y.S.2d 243, 247 (2d Dep't 1993); *Fogel v. Hertz Int'l, Ltd.*, 141 A.D.2d 375, 376, 529 N.Y.S.2d 484, 485 (1st Dep't 1988). Under New York law, an agent's authority may be actual, implied, or apparent. *See Graffman v. Delecea*, 96 Civ. 7270, 1997 WL 620833, at *3 (S.D.N.Y. Oct.8 1997); *99 Commercial Street, Inc. v. Goldberg*, 811 F.Supp. 900, 906 (S.D.N.Y.1993).

Here, ORIC claims that Hansa acted as Duferco USA's agent pursuant to actual authority. In its memorandum of law submitted to Magistrate Judge Bernikow, ORIC stated that it was "not relying on any theory of apparent authority." *See* Duferco Mem. at Ex. A. (citing Plaintiff's Mem. of Law in Opp'n to Motion by Duferco Defendants for Reconsideration or Reargument of Their Prior Motion to Dismiss Am.Compl.). Additionally, in Magistrate Judge Bernikow's November 2, 1998 order addressing the Duferco Defendants'

motion for reconsideration of portions of the 9/23/98 Report, Magistrate Judge Bernikow stated that although he did "mention apparent authority while discussing agency relationships in [his 9/23/98 Report, he] in no way relied on apparent authority." *See* Order of November 2, 1998 at 2–3. This Court, however, will analyze ORIC's allegations under all three theories of agency.

### 1. Actual Authority

Actual authority "is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in light of all circumstances attending these manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware." *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir.1997) (citation omitted); *see also* 2A N.Y. Jurisprudence 2d, Agency and Independent Contractors § 81 (1998); In re *Artha Management, Inc.*, 91 F.3d 326, 329 (2d Cir.1996) (stating that actual authority may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act) (citations and quotations omitted). Interpreting the facts in a manner most favorable to ORIC, ORIC may be able to support a claim of actual authority against Duferco USA. It is standard for a commercial importer, such as Duferco USA, to employ the assistance of a customhouse broker for the purpose of importing goods on its behalf. *See E.C. McAfee v. United States*, 650 F.Supp. 1026, 1028 (Ct. Int'l Trade 1986), *aff'd*, 832 F.2d 152 (Fed.Cir. 1987); *I.C. Herman & Co. v. Taub, Hummel & Schnall, Inc.*, 497 F.2d 1301, 1304 n. 3 (2d Cir.) (noting that importing requires the special services of a customhouse broker); *cert. denied*, 419 U.S. 885, 95 S.Ct. 153, 42 L.Ed.2d 125 (1974). Moreover, an individual's "character as a customhouse broker implies that he is acting for another." *McAfee*, 650 F.Supp. at 1028.

Here, Duferco USA authorized Hansa as importer of record and Fink as customhouse broker to serve as its agents for the arrival and delivery of Brazilian steel into the United States. *See* Am.Compl. at ¶¶ 13, 27–31. "The broker prepares the entry and assembles all the supporting documents, files the entry package, and follows the transaction through its intermediate stages, which may include the filing of additional documents or bonds, to the release of the merchandise, final liquidation and payment of duties." *McAfee*, 650 F.Supp. at 1028. Thus, because posting security is usually necessary when a party imports goods, Duferco USA knew that Hansa would post Customs surety bonds on its behalf.

Furthermore, the Hansa/Duferco contract recognizes that Hansa would post bonds in connection with the steel that Hansa was importing for Duferco USA. The Hansa/Duferco contract, which altered the already existing business relationship between Hansa and Duferco USA, notes that when acting as importer for Duferco USA in the past, Hansa had "post[ed] the required bonds." *See* Am.Compl. at Ex. C. More specifically, with regard to the goods presently at issue, the Hansa/Duferco contract states that Hansa, "as importer of record, will post any security required." Am.Compl. at Ex. C. at ¶ 1.

It is definitely a legitimate argument, therefore, that Hansa had actual authority to post bonds for Duferco USA based on direct manifestations from Duferco USA to Hansa. Duefrco USA argues that even if Hansa was Duferco USA's agent for the arrival and delivery of the steel, Duferco USA did not authorize Hansa to post bonds. *See* In re *Shulman*, 744 F.2d at 295 (reasoning that acting as an agent for one purpose does not provide the agent with authority to also act in other capacities). It appears, however, that responsibility for arrival and delivery of goods encompasses the posting of surety bonds. Considering the custom of the importing business of posting bonds, the past rela-

tionship between Hansa and Duefrco USA, and the present Hansa/Duferco contract alluding to Hansa's posting of bonds on Duferco USA's behalf, ORIC may be able to establish a claim of agency on a theory of actual authority against Duferco USA.

Duferco USA contends that several arguments belie any allegation of actual authority. First, Duferco USA asserts that the Hansa/Duferco contract negates any claim of actual authority that ORIC may assert. *See* Duferco Mem. Duferco USA concedes that its prime motivation for entering the contract was to avoid payment for any Customs duties. Despite that the contract contains language that attempts to protect Duferco USA from any liability, the contract also includes language indicating that Hansa will post bonds for Duferco USA. Merely because the contract attempts to limit Duferco USA's liability for imposed duties does not mean that the contract also restricts Hansa's power to post bonds in connection with the imported steel. *But see Sixth Avenue West Assocs. v. Local 32B–32J, Serv. Employees Int'l,* 95 Civ. 5123, 1995 U.S.Dist. Lexis 10382, at *11, 1995 WL 442157, at *5 (S.D.N.Y.1995) (holding that actual authority did not exist because contract specifically limited power of agent); *Property Advisory Group, Inc. v. Bevona,* 718 F.Supp. 209, 211 (S.D.N.Y. 1989) (same). Thus, while the Hansa/Duferco contract may ultimately be of import with respect to Duferco USA's insulation from liability on the assessed duties, affording Duferco USA the benefit of its bargain, the contract does not bar ORIC from asserting a valid agency claim.

Second, Duferco USA argues that as importer, Hansa was primarily responsible for the payment of all imposed duties. *See* Duferco Mem. at 18–19. Duferco USA cites 19 C.F.R. § 141.1, which states that "[t]he liability for duties, both regular and additional, attaching on importation, constitutes a personal debt due from the im-

porter to the United States." Although Hansa did act as importer here, Hansa technically was "importer of record" acting on behalf of the actual importer, Duferco USA. The statute does not refer to the "importer of record," but rather to the "importer." Further, Duferco USA cites 19 U.S.C. § 1483(1) in support of the contention that the importer of record is considered the owner of the imported goods for the purposes of attached duties. *See* Duferco Mem. at 18.[13] Congress, however, repealed 19 U.S.C. § 1483(1) on January 12, 1983.

Third, citing 19 U.S.C § 1485(d), Duferco USA suggests that the only basis upon which it would assume responsibility for the imposed duties would be if Hansa had filed an owner's declaration and superseding bond. 19 U.S.C. § 1485(d) provides:

> Liability of importer of record for increased duties. An importer of record shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe.

19 U.S.C. § 1485(d). Interpreting the statute to mean that the importer of record is exclusively liable for all attached duties unless the actual owner, through declaration and bond, assumes responsibility is a misread of the statute. Nowhere does the statute suggest that absent the filing of a declaration and superseding bond is the actual owner free from liability on Customs duties. Section 1485(d) only addresses how the importer of record may insulate himself from liability. *See William G. Young & Co. v. Dyer,* 112 F.Supp.

---

**13.** 19 U.S.C. § 1483(1) provided: "All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned...." 19 U.S.C. § 1483(1).

1, 2, n. 1 (S.D.N.Y.1953) (recognizing only that an importer of record may avoid liability by filing an owner's declaration); *United States v. Daniel F. Young, Inc.*, 46 F.Supp. 373, 374–75 (S.D.N.Y.1942) (same). Thus, because Hansa did not file a declaration or bond within ninety days from the date of entry of the steel, Hansa remained liable for assessed duties. Such a failure to file a declaration and bond did not, however, also absolve Duferco USA from any obligation for payment of the imposed duties. More significantly, § 1485(d) addresses who may be liable to the government for Customs duties. Here, this Court is concerned with Duferco USA's liability to ORIC, not the government, for posted bonds, not assessed duties. Accordingly, despite the arguments that Duferco USA sets forth, a liberal construction of the facts ORIC alleges in the amended complaint reveals evidence that Duferco USA may have conferred actual authority upon Hansa to act on its behalf.

### 2. Implied Authority

Even if ORIC ultimately fails to establish a claim of agency pursuant to actual authority, it may be able to support a claim under a theory of implied authority. "Implied authority may be viewed as 'actual authority given implicitly by a principal to his agent' or as a kind of authority arising solely from the designation by the principal of a 'kind of agent who ordinarily possesses certain powers.'" *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243, 251 (2d Cir.1996) (citation omitted); *accord Graffman*, 1997 WL 620833, at *4. The New York Court of Appeals stated that "[a]n agent enjoys implied authority to enter into a transaction when verbal or other acts by a principal reasonably give the appearance of authority to the agent." *Greene v. Hellman*, 51 N.Y.2d 197, 204, 433 N.Y.S.2d 75, 80, 412 N.E.2d 1301 (1980). Further, "[r]eliance on implied . . . authority is acceptable so long as it is reasonable from the circumstances surrounding the transaction." *Id.* (citation

omitted); *accord Graffman*, 1997 WL 620833, at *4.

Here, by virtue of certain excerpts in the Hansa/Duferco contract, it is certainly arguable that Duferco USA implicitly gave Hansa the authority to post bonds on Duferco USA's behalf. Stating in the contract that Hansa, "as importer of record, will post any security required," can be understood as an implicit grant of authority, if not express. Am.Compl. at Ex. C. at ¶ 1. Additionally, Duferco USA effectively designated Defendant Fink, a customhouse broker possessing "certain powers", including the requisite skill and experience to enter goods, to import the steel. *See McAfee*, 650 F.Supp. at 1028; *Taub*, 497 F.2d at 1302 n. 3. Duferco USA specifically entered into a contract with Hansa. Defendant Fink, however, as alleged organizer, corporate officer, and owner of Hansa, controlled Hansa. *See* Am.Compl. at ¶ 13. Finally, because it is traditional to post surety bonds when importing goods into the United States, it would be reasonable for Hansa to assume that Duferco USA implicitly appointed Hansa as its agent for the purpose of posting bonds.

### 3. Apparent Authority

ORIC may also be able to set forth a competent claim of agency based upon apparent authority.

> Apparent authority is based on the principle of estoppel. It arises when a principal places an agent in a position where it appears that the agent has certain powers which he may or may not possess. If a third person holds the reasonable belief that the agent was acting within the scope of his authority and changes his position in reliance on the agent's act, the principal is estopped to deny that the agent's act was not authorized.

*Marfia*, 100 F.3d at 251 (quoting *Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 665 (2d Cir.1964). The New York Court of Appeals held:

Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority.

*Hallock v. State*, 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 513 (1984).

Therefore, contact between the principal and the third party is a necessary element of any theory of apparent authority. In fact, arguing that any alleged representation from Defendant Cummings to ORIC regarding unnamed clients is irrelevant, Duferco USA mentioned in its memorandum to this Court that a theory of apparent authority "can only be based on the acts of the principal, not the agent." Duferco Mem. at 9 (citation omitted). Duferco USA implicitly suggested that because Duferco USA was an alleged undisclosed principal and had no contact with ORIC, any claim of apparent authority must fail. Nevertheless,

> [a]n undisclosed principal may, in certain circumstances, create apparent authority in his agent even without any contact between the principal and the third party. Where the principal has voluntarily placed the agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business may be justified in assuming that such agent has authority to perform a particular act there is apparent authority.

*Graffman*, 1997 WL 620833, at *5. Thus, because it is conceivable that ORIC is familiar with the customs and trade usages of importing, including that an importer may employ the services of another company and a customhouse broker to import the goods and post surety bonds as a necessary consequence thereof, ORIC may have been justified in assuming that Hansa had authority to act on behalf of a principal. Accordingly, a claim that Hansa acted pursuant to Duferco USA's apparent authority is arguable.

**D. Successor Liability:**

ORIC asserts its claims for reimbursement, indemnity, and unjust enrichment against not only Duferco USA, but also against the other Duferco Defendants as successors in interest to Duferco USA. *See id.* at ¶ 11–12. Duferco USA, however, argues that having again failed to set forth a sufficient claim for successor liability, this Court should not permit ORIC limited discovery as to Duferco Defendants' corporate relationships. *See* Duferco Mem. at 23–24.

In its February 26, 1997 opinion, this Court instructed ORIC how to assert a proper successor liability theory against the Duferco Defendants. *See Old Republic*, 170 F.R.D. at 376. This Court stated:

> In general, successor liability will lie when: (1) there is an express or implied agreement to assume the other company's debts and obligations; (2) the transaction [conveying the assets of one company to the other] was fraudulent; (3) there was a de facto merger or consolidation of the companies; or (4) the purchasing company was a mere continuation of the selling company.

*Id.* at 376 (citing *American Buying Ins. Serv. v. S. Kornreich & Sons, Inc.*, 944 F.Supp. 240, 249 (S.D.N.Y.1996)); *accord Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195 (1983). In response to this Court's directions, ORIC alleged the following in its amended complaint:

> Although the precise relations among the Duferco defendants are at present unknown to plaintiff and is a matter as to which plaintiff requires discovery in this action, on information and belief one or more of the Duferco defendants are or were alter egos of, and/or successors in interest to, defendant Duferco Ltd. (USA).
>
> In particular, one or more of the Duferco defendants were the means by

which Duferco Ltd. (USA)—before and after its purported dissolution in 1988—conducted its business of buying steel in Brazil and reselling the same in the United States. In this connection, on information and belief:

A. Even after it had nominally terminated its corporate existence, Duferco Ltd. (USA) continued to maintain offices and a telephone listing in New York, and otherwise continued to conduct business.

B. Before it purportedly dissolved in 1989, defendant Duferco Steel Sales Corporation was an affiliate of Duferco Ltd. (USA) and sold steel products which it purchased from Duferco Ltd. (USA).

C. After defendants Duferco Ltd. (USA) and Duferco Steel Sales Corporation were dissolved, their business was carried on by defendants Duferco Steel Inc. and Duferco Trading Corporation.

D. The same persons acted as officers and/or employees in each of the Duferco defendants—Bruno Bolfo was the Chairman of the Duferco Steel Inc., the President of Duferco Trading Corp., and the President of Duferco Ltd. (USA); Steve Clayton was the Vice President/Secretary–Treasurer of Duferco Steel Inc., Duferco Trading Corp. and Duferco Ltd. (USA); Arthur Koenig was a Vice President of Duferco Steel Inc., Duferco Trading Corp. and Duferco Ltd. (USA); and Walter Hass was a Vice President of Duferco Steel Inc., Duferco Trading Corp. and Duferco Ltd. (USA).

Am.Compl. at ¶¶ 11–12. While ORIC did not address any of the four possible theories of successor liability specifically, ORIC maintains that without any discovery of information that it claims is solely within the knowledge of the Duferco De-

fendants, "no further particularization of [their successor claim] is possible." Plaintiff's Mem. of Law in Opp'n to Objection by Duferco Defendants to the Report and Recommendation of Magistrate Judge Bernikow Dated September 23, 1998 at 25.

This Court agrees with ORIC's assessment. This Court is concerned with the true nature of the relationship between the Duferco Defendants and whether Duferco USA, thereby, continued to conduct business after its purported dissolution in 1988. Considering that discovery of information that is within the sole knowledge of the Duferco Defendants, such as a written agreement or memo, may substantiate ORIC's claims, limited discovery is appropriate.

Moreover, as Magistrate Judge Bernikow correctly recognized in his 9/23/98 Report, "liberally construed, ORIC's allegation that identical persons served identical roles as corporate officers in three Duferco defendants, Duferco, Duferco Steel and Duferco Trading, may suffice for the court to find successor liability on a de facto merger or consolidation theory." 9/23/98 Report at 20. Duferco USA, on the other hand, in opposition to any de facto merger theory that ORIC could assert on the pleadings, stated that "the essence of a de facto merger is the 'wholesale transformation of one company . . . into another.'" Duferco Mem. at 24 (citing *Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529 (S.D.N.Y. 1985)).

Such a matter-of-fact, meager, and depthless application of the *Lumbard* Court's analysis, however, is misguided and unfair to Plaintiff. In *Lumbard*, the court stated:

For a de facto merger to occur, there must be continuity of the successor and predecessor corporation as evidenced by: (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of liabilities

ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets, and general business operation.

*Lumbard,* 621 F.Supp. at 1535 (citing *Arnold Graphics Indus., Inc. v. Electronic Tabulating Corp.,* 775 F.2d 38 (2d Cir. 1985)). Significantly, the *Lumbard* Court also noted that "[n]ot all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a de facto merger." *Id.*

▆▆▆ In holding that the plaintiff's allegations of successor liability were sufficient to state a de facto merger claim and, thereby, withstand a motion to dismiss, the *Lumbard* Court highlighted that the same employees and management worked for the alleged predecessor and successor companies. *Id.* at 1536. Here ORIC enumerates in its amended complaint several Duferco USA employees who worked for other Duferco Defendants in the same capacities. *See* Am.Comp. at ¶ 12. Thus, considering the allegations in a manner most favorable for ORIC, ORIC states an adequate claim of de facto merger against the Duferco Defendants. Limited discovery of the Duferco Defendants' corporate relationships, which may reveal further support for a successor liability theory, is warranted. Accordingly, Magistrate Judge Francis, to whom the Clerk of the Court referred this case after Magistrate Judge Bernikow retired, was justified when he lifted the stay of discovery that Magistrate Judge Bernikow initially imposed. *See* Memo–Endorsement by Magistrate Judge James M. Francis·on April 30, 1999 on Letter from Mark I. Silberblatt to Magistrate James M. Francis of April 29, 1999, at 5.

### III. Other Recommendations of the 9/23/98 Report

Magistrate Judge Bernikow also made other recommendations in his 9/23/98 Report to which none of the parties have objected. In particular, he recommended that this Court (1) grant ORIC limited discovery as to the question of the Duferco Defendants' capacity to be sued, (2) deny ORIC discovery as to its alter ego liability theory, (3) permit ORIC's claims of reimbursement and indemnification to remain in this case, and (4) dismiss ORIC's claim against Duferco USA for unjust enrichment. Having reviewed those portions of the 9/23/98 Report and·having not found them to be clearly erroneous, this Court adopts them.

### Conclusion

Granting a motion to dismiss to a party is a blunt weapon and a drastic remedy that a court should award only after careful consideration of all the salient issues. This Court has comprehensively analyzed both the 3/31/98 Report and the 9/23/98 Report, all accompanying objections and motion papers, and the relevant case law. This Court finds that Plaintiff has sufficiently alleged in its amended complaint claims for reimbursement and indemnification against Hansa and the Duferco Defendants. Furthermore, considering the factual issues surrounding the question of whether Duferco USA was Hansa's principal for the purpose of posting ORIC's surety bonds, this Court is satisfied, at this juncture in the litigation, that ORIC has alleged sufficient facts to quash a motion to dismiss. This Court also finds that it is a viable argument that the Duferco Defendants were successors in interest to Duferco USA. Finally, the appropriate statutes of limitations bar Plaintiff's claims for breach of fiduciary duty and intentional misrepresentation. Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff's claims for breach of fiduciary duty, intentional misrepresentation, and unjust enrichment are DISMISSED with prejudice.

IT IS FURTHER ORDERED THAT Plaintiff be afforded limited discovery with regard to the Duferco Defendants' capacity to be sued and their corporate relation-

ships. This Court suggests that the parties establish a discovery schedule with Magistrate Judge Francis specifically enumerating those topics to be covered by discovery in accordance with this opinion.[14]

IT IS FURTHER ORDERED THAT those portions of Magistrate Judge Bernikow's Report and Recommendation of 9/23/98 to which objections have not been filed are ADOPTED.

**14.** This Court advises that Magistrate Judge Francis exercise tight supervision over the parties during this discovery process.