E. H. Corrigan *v.* United States (No. 4557)[1]

---
[1] C. A. D. 364.

United States Court of Customs and Patent Appeals, May 20, 1947

*Neel, King & Rachal* (*Nat B. King* of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue* and *Sybil Phillips*, special attorneys, of counsel), for the United States.

[Oral argument April 2, 1947, by Mr. Donohue; submitted on brief by appellant]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Third Division, dismissing the protest of appellant against the action of the collector concerning his disposal or repayment of additional duties ordered remitted by said division of said court under section 489 of the Tariff Act of 1930.

The trial court considered two so-called "protests" and in its decision (Abstract 51046) held that the "formal protest" was untimely and dismissed the same. It said in part:

It will be seen from the foregoing [table of dates] that protest was not filed within the 60-day period after reliquidation, prescribed by the statute (section 514, Tariff Act of 1930). Even were we to construe the pleadings as sufficient to constitute a protest against the collector's action, although it is specifically directed against the "decision of the Department," the fact remains that it is untimely. The importer maintains that his letter of April 17, 1942, was a protest. Said letter would be premature as a protest against the reliquidation of entry 509–L in which reliquidation took place April 29, 1942. Moreover, an examination of the letter referred to discloses that it was not intended as a protest against any act of the collector but is merely a statement of plaintiff's position in connection with these entries and requests payment of any refunds of additional duty. This letter states:

\*　　\*　　\*　　\*　　\*　　\*　　\*

It is our understanding that you propose to make payment of the additional duties paid by E. H. Corrigan on the above entries to Charles and Samuel Klien. \*　\*　\*

Inasmuch as no certification was made as to the payee up to the time of the receipt of this letter, it could not be deemed to be a protest for the reason that the act against which it is directed had not occurred.

On this state of the record we deem it unnecessary to express any opinion on the merits of the case or the jurisdictional question raised.

Protest being untimely should be and the same is hereby dismissed.

The facts are not in dispute but involve a great amount of subject matter, some of which, in view of our conclusion, need not be stated here.

During the months of February, March, April, and May of 1936, there were imported at the Port of Laredo, Tex., five entries (originally six, but we are not concerned with the sixth entry) from Mexico of certain leather huaraches (sandals). The appellant herein was a customs broker at Laredo and, at the time of importation, had a term bond which was chargeable with the said importations, Corrigan being the consignee. Corrigan paid additional duties, upon the demand of the Government, in order to protect his bond and presumably for the purpose of obtaining immediate release of the goods. The additional duties were added by the customs officials on the ground of undervaluation. An appeal to reappraisement by Corrigan was dismissed upon his motion.

Corrigan then filed with the United States Customs Court a petition for the remission of such duties, and on October 6, 1941, the said court granted the petition for remission upon the ground that the record showed that the low entered value was not the result of any intent to deceive the appraiser as to the value of the merchandise or to defraud the revenue of the United States (*Corrigan* v. *United States*, 7 Cust. Ct. 280, Abstract 46399).

In the latter part of March 1942, four of the entries were reliquidated. The fifth was reliquidated on April 29, 1942. The refund on two of the entries was made in March 1942, and on the others in August 1942. All the refunds were made to the owners, certification of ownership in Charles and Samuel Klein having been filed as provided for in section 485 (d) of the Tariff Act of 1930.

The following tabulation discloses all of the facts not elsewhere stated which we regard as of importance here:

| Entry No. | Date of entry | Owner's declaration verified | Owner's declaration filed | Reliqui-dated* | Refund certified | Refund paid‡ (amount) | First notice payment would not be made to Corrigan | Protest made |
|---|---|---|---|---|---|---|---|---|
| 414-L | 3/13/36 | 3/13/36 | (†) | 3/37/42 | Aug. '42 | Aug. '42 ($196.38) | 8/14/42 | 9/11/42 |
| 509-L | 4/21/36 | 6/ 3/36 | 6/ 8/36 | 4/29/42 | Aug. '42 | Aug. '42 ($68.48) | 8/14/42 | 9/11/42 |
| 516-L | 4/25/36 | 6/ 3/36 | 6/ 8/36 | 3/24/42 | Mar. '42 | Mar. '42 ($82.20) | 8/14/42 | 9/11/42 |
| 608-L | 5/27/36 | 6/ 5/36 | 6/ 9/36 | 3/24/42 | Mar. '42 | Mar. '42 ($143.61) | 8/14/42 | 9/11/42 |
| 393-L | 2/28/36 | 2/28/36 | (†) | 3/24/42 | Mar. '42 | 8/17/42 ($58.22) | 8/14/42 | 9/11/42 |

*Remission granted, October 6, 1941.
†Assumed by collector to have been filed within 90-day period specified by law.
‡All checks mailed to one or the other of the Kleins. The checks for $196.38 and $68.48 were returned unclaimed.

The instant record discloses that on August 20, 1942, the collector certified and paid to Samuel Klein by check the amount of additional

duties returnable on entry 509–L, which check was returned unclaimed. No explanation is given for the fact that the check was not claimed. With reference to entry 516–L, the collector certified that for payment in March 1942, to Samuel Klein who received the money. The same is true of entry 608–L, which was certified for payment on March 28, 1942. On this same date entry 393–L was certified for payment and in August 1942, a check was sent to Charles Klein who received the money on August 20, 1942. Entry 414–L was certified for payment in August 1942, and a check was sent to Charles Klein which was returned unclaimed without explanation.

Thus it is obvious that the additional duties returnable on three of the entries have been paid to Samuel Klein or Charles Klein and that no money has been paid to anyone on two of the here involved entries.

The record discloses further that on April 17, 1942, appellant addressed a communication to the Collector of Customs at Laredo, Tex., which was stated to be a formal demand for payment to him of the additional duties levied on the five entries herein involved. It was alleged that the additional duties were collected by the collector from Corrigan and paid by Corrigan. The letter further stated that he made the entries as a licensed customshouse broker for Charles and Samuel Klein of St. Louis, Mo., and that "the merchandise was released from customs custody under Article 315 (c) of the Customs Regulations upon E. H. Corrigan personally stipulating by endorsement on the entries, to pay any increased or additional duties" and that "all of the entries were charged to E. H. Corrigan's term bond." He there called the collector's attention to the fact that he was required to pay the additional duties to protect his bond since Charles and Samuel Klein refused to do so.

This letter pointed out that the United States Customs Court had granted, as aforesaid, the petition to remit the additional duties which had been filed by E. H. Corrigan in his own name. The communication also stated that it was Corrigan's understanding that the collector proposed to make payment of the additional duties to Charles and Samuel Klein and that the duties should be refunded by the Government to the party who had paid them.

The date of this communication being April 17, 1942, of course, from the above showing, discloses that if regarded as being a protest it was premature as to some of the entries, since up to that time there had been no refusal on the part of the collector to pay Corrigan and in one entry there had been no reliquidation. Although two of the entries had been paid in March of that year, this fact was apparently not known by Corrigan since he made no mention of it in the letter.

The trial court held that this communication, if regarded as a protest, was premature as to some of the entries and was not intended

as a protest against any action of the collector but was merely a statement as to the appellant's position in connection with these entries and a request for the payment to him of the additional duties to be refunded.

We agree with the trial court that the communication of April 17, 1942, was not a proper protest.

It seems that the communication of Corrigan to the collector resulted in the submission of the question to the Commissioner of Customs by the collector on April 18, 1942. On August 17, 1942, the collector wrote appellant's counsel, Neel, King and Rachal, at Laredo, Tex., to the effect that he (the collector) had been instructed by the Commissioner in the matter and that he was enclosing a copy of the Commissioner's letter, which letter was dated August 14, 1942, and which gave the reasons why it was necessary, under the law and Treasury Department regulations, to pay the actual owners, the Kleins, rather than Corrigan.

As far as the record discloses, on August 14, 1942, Corrigan was for the first time informed that the collector positively refused to meet Corrigan's demand for the refund of the additional duties which he had paid.

Appellant, under date of September 10, 1942 (received by the collector September 11, 1942), filed formal protest in the following language:

> In re: Laredo Consumption Entries Nos. 509–L, 516–L, 608–L, 393–L, 414–L, covered by U. S. Customs Court Petitions 5888–R to 5892–R, inclusive.
>
> Please accept as this [sic] formal protest to the decision of the Department in ordering payment of the additional duties levied on the above entries to Charles and Samuel Klien. This protest is based on the grounds set forth in our letter of April 17, 1942, a copy of which is attached hereto.
>
> Please refer this protest to the Customs Court for determination.

The protest was forwarded in accordance with law to the United States Customs Court. As hereinbefore stated, the court held the protest of September 11, 1942, untimely because it was filed more than 60 days after the reliquidation of the entries. As above noted, the entries had been reliquidated in accordance with the court's order in the remission case, in March and April of 1942.

The position of appellant is that the "protests" informed the collector, in view of all the circumstances and taking into consideration the accompanying enclosed letter, as to what his demand was and that the collector was not misled or confused and fully understood the issue and that he refused to pay by virtue of the regulations hereinafter referred to. With this we agree.

In the trial of the instant case before the Customs Court, the Government moved to dismiss the protest on two grounds: (1) that the court had no jurisdiction to hear and determine a protest of this kind; (2)

that the protest was not filed within 60 days after the date of reliquidation.

While it is obviously true that the protest of September 11, 1942, was filed more than 60 days after the reliquidation, it was filed within 60 days from the time that the collector refused to pay the appellant. The reliquidation was in accordance with the order of the court and merely ascertained the amount of duties to be paid but it was not then decided as to whom the refunds were payable.

It is the position of the Government that, under the contention made by it in the case of *Eurasia Import Co., Inc.*, v. *United States*, 31 C. C. P. A. (Customs) 202, C. A. D. 273 (decided against the Government), section 514 of the Tariff Act of 1930 gives no jurisdiction to the court to try a protest lodged against the refusal to pay additional duties ordered remitted. It is the position of appellant, however, that under the holding in the said *Eurasia* case the trial court and this court have full jurisdiction to decide the instant issue.

The *Eurasia* case involved the refund of excess duties, not additional duties, but in the instant case there are excess duties arising from the levying of additional duties, and if the reasoning in that case is followed it would seem that the trial court and this court have jurisdiction of the subject matter.

Unquestionably the United States Customs Court and this court have jurisdiction, authorized by statute, to consider a protest lodged against the collector's refusal to pay additional duties ordered remitted by the trial court. This law, we think, became well-settled by this court's decision in 1924 in the case of *Fish* v. *United States*, 12 Ct. Cust. Appls. 307, T. D. 40315, which was sweepingly affirmed by the Supreme Court of the United States in an opinion by Chief Justice Taft in *United States* v. *Fish*, 268 U. S. 607. In the latter case the court stated:

The Court of Customs Appeals reached the conclusion that the decision of the Board on the law and facts might affect the duty imposed on the imported articles so materially that Congress must have intended to give the importer the right to avail himself of the provision for appeal to the Court of Customs Appeals. We agree with that conclusion. *We think that this is a decision of the law and the facts respecting the rate of duty imposed on classified merchandise imported, or at least that it concerns the fees and charges connected therewith.* We think that it is a question relating to the laws and regulations governing the collection of customs revenues of importance, and is appealable. It comes, therefore, under the several heads of the jurisdiction of the Court of Customs Appeals, as defined in §§ 195 and 198. We think that the interpretation of the expression "appealable questions" as only including questions which are elsewhere referred to as appealable, is too narrow a view of the purpose of the statute. It would be unreasonable to suppose that a Court of Appeals, given the power to reexamine both the law and the facts on all the important issues raised in respect to duties, was excluded from reviewing the issue of retaining or remitting a considerable percentage of those duties. This view is sustained by *Brown & Co.* v. *United States*, 12 Ct.

Cust. Appls. 93, although the point there involved was only one of jurisdiction of the Board. [Italics ours.]

Section 195 of the Judicial Code, adopted March 3, 1911, to which the Supreme Court refers in the above excerpt, gave this court jurisdiction, and provided for jurisdiction to review "final decisions by a board of general appraisers in all cases as to the construction of the law and the facts respecting the classification of merchandise and the rate of duty imposed thereon under such classification and the fees and charges connected therewith, and all appealable questions as to the jurisdiction of said board, and all appealable questions as to the laws and regulations governing the collection of the customs revenues."

Section 489 of the Tariff Act of 1930, relating to additional duties, in respect with which we are here concerned, is comparable to section 489 of the Tariff Act of 1922, which latter provision was involved in the said *Fish* cases. Both acts provide that the additional duties should be a duty and that "such additional duties shall not be construed to be penal, etc." Presumably it was the purpose of Congress to give the customs trial court and this court jurisdiction over all matters relating to such additional duties and deprive the district courts of the United States of jurisdiction over suits for the return of duties which were not penal.

In *Cotonificio Bustese, S. A.* v. *Morgenthau*, 74 App. D. C. 13, 121 F. (2d) 884, the United States Court of Appeals for the District of Columbia, in a case involving its jurisdiction and the 'jurisdiction of the United States District Court for the District of Columbia to consider the repayment of additional duties levied for *failure to mark*, held such duties to be in the nature of penalties and stated that, "A penalty, like a rose, by any other name, smells just as sweet— or sour. Penal effect was the controlling factor." Congress subsequently provided that such duties (arising from failure to mark) should not be regarded as penal and the court pointed out that this was an important factor. The court distinguished as involving a different question the decisions of this court which had held, in *Bradford Co. et al.* v. *American Lithographic Co.*, 12 Ct. Cust. Appls. 318, T. D. 40318; *Lewis & Conger et al.* v. *United States*, 13 Ct. Cust. Appls. 22, T. D. 40862; *Kee Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943; *Sesquicentennial Exhibition Association* v. *United States*, 19 C. C. P. A. (Customs) 288, T. D. 45466, that additional duties levied for failure to mark were within the jurisdiction of the United States Customs Court and were not penalties.

We are of the opinion that in both instances Congress intended to require that the levying of additional duties, either for undervaluation or failure to mark, be regarded as duties and not penalties. In this view we think we are supported by both the language of the statute and the holding of the Supreme Court in the *Fish* case, *supra*. We

therefore conclude that the first ground of the Government's motion challenging the jurisdiction of the United States Customs Court to consider the protest for the collector's failure to repay the additional duties ordered remitted by said court should be overruled. We think the court had the same jurisdiction to consider a protest for the failure of the collector to pay as it did to consider the remission of additional duties in the first place and that jurisdiction to review decisions of the trial court in this kind of case was granted to this court by the statute referred to hereinbefore.

While the Government has not challenged the jurisdiction of this court directly in the instant appeal, it challenged the jurisdiction of the trial court. In view of what has been said hereinbefore it would seem to follow that this court would have jurisdiction to review all appealable decisions of the trial court. We have no doubt whatsoever that the United States Customs Court has the same jurisdictional power to pass upon a protest lodged against the collector's refusal to pay to one person instead of another additional duties ordered remitted by the trial court as it has originally to pass upon the right of remission.

Therefore, assuming that appellant's protest of September 11, 1942, was timely (and we think it was), it is our conclusion, for reasons presently expressed, that the trial court should have overruled the protest instead of dismissing it.

Section 485 (d) of the Tariff Act of 1930 attempts to take care of situations quite comparable to that involved here. It reads as follows:

SEC. 485. DECLARATION.

\*        \*        \*        \*        \*        \*        \*

(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee.

It seems from the record that as to some of the entries the declaration of ownership was made at the time of entry. This does not apply to other of the entries, but they all (the record, we think, discloses) were filed within the ninety-day period specified in section 485 (d). The owners, therefore, became responsible for additional duties "under such regulations as the Secretary of the Treasury may prescribe," and the owners became possessed of all the rights of the consignee.

While it is settled law that a customs broker may make entry, file protests, and petition for remission of additional duties in his own name (see *Hensel, Bruckman & Lorbacher (Inc.)* v. *United States*, 13

Ct. Cust. Appls. 498, T. D. 41377; *Frederick Richards* v. *United States*, 24 C. C. P. A. (Customs) 243, T. D. 48670), it is obvious, when said section 485 (d), *supra*, is taken into consideration, that he does so as the agent of the owner. If he, in order to accommodate or serve his client or customer, has paid the additional duty so that he may get the goods removed from customs custody, it then becomes a matter between him and his client and not one with which the Government is concerned.

Pursuant to the statute, article 1201, Customs Regulations of 1937, was promulgated by the Secretary of the Treasury. This regulation reads in part as follows:

**Art. 1201.** (*b*) Whenever it is found on liquidation or on reliquidation of an entry that a refund is due, a notice of refund, customs Form 5269, shall be prepared at the headquarters port in the name of the person to whom the refund is due as determined by paragraph (c).

(*c*) Refunds of such excessive duties shall be made by check drawn to the order of the importer of record, that is, the person in whose name the entry was made, or to the order of the actual owner when substituted for the owner of record in accordance with section 485 (d) of the tariff act. * * *

It seems that this regulation does nothing more than to provide for carrying out the intent of Congress in its enactment of section 485 (d), *supra*, and therefore is a reasonable and proper regulation as applied to the facts at bar. Under the statute and under the said regulation, the Commissioner of Customs properly instructed the collector to pay the owners, and it seems to us that the collector, under the statute and the said instructions, had nothing else to do but to pay the said owners. The fact that it is paid to someone who refuses, for whatever reason, to reimburse Corrigan does not change the law applicable to the instant situation.

The burden of appellant's argument is that the regulation, statute, and judgment of the court in the remission case contemplate the payment of the additional duties to the person who paid them. This is fallacious reasoning because an outsider may have paid them and he might have been wholly unrelated to the transaction in any way except that he furnished the money.

Ordinarily, the party who pays additional duties and gets a judgment for remission receives a return of the money; but where the party paying the money, acting for his customer or client, files notice of ownership as provided for in the statute, he divests himself of any right to claim that he is entitled to the repayment of additional duties. The situation would be quite different were it not for the filing of the declaration of ownership, which in this case we think is a controlling consideration.

From the above statement of facts it is disclosed that the money due for remission of duties as to two of the entries evidently is still in the hands of the Government. Whether appellant has a right of

19

action against the Government or a joint one against the Kleins and the Government for the unpaid sum and against the Kleins for reimbursement of the amount paid is a matter with which we cannot concern ourselves here. While we are always desirous of construing statutes so as to bring about equitable settlements of disputes in customs cases, where permissible, we are not a court of equity and frequently find ourselves helpless in relieving litigants of hardships which result from relationships into which they have placed themselves.

It is our view, for the reasons stated, that the trial court should have overruled the protest. Its judgment dismissing the protest on the ground that it was untimely is *reversed* and the cause is *remanded* with instructions to overrule the protest.