**Slip Op. 05-107**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

UNITED STATES,

        Plaintiff,

        v.

PAN PACIFIC TEXTILE GROUP,
INC., AVIAT SPORTIF, Inc.,
BUDGET TRANSPORT, Inc.,
PRIME INTERNATIONAL AGENCY,
BILLION SALES, EVER POWER
CORP., AMERICAN CONTRACTORS
INDEMNITY COMPANY, and
THOMAS MAN CHUNG TAO, and
STEPHEN SHEN YU JUANG,

        Defendants.

Before: Richard W. Goldberg,
        Senior Judge

Court No. 01-01022

**OPINION**

[Plaintiff's motion for partial summary judgment granted in part
and denied in part; defendants' motion for partial summary
judgment denied. Defendants liable for duties unpaid as a result
of agent's fraudulent customs violations. Additional briefing
required to determine amount of duty liability. Trial ordered on
issue of defendants' liability for civil penalty.]

Dated: August 26, 2005

    Peter D. Keisler, Assistant Attorney General; David M.
Cohen, Director, Commercial Litigation Branch, Civil Division,
U.S. Department of Justice (Patricia M. McCarthy and Michael D.
Panzera); Annmarie R. Highsmith, Senior Attorney, Office of
Associate Chief Counsel, U.S. Customs and Border Protection, U.S.
Department of Homeland Security, for plaintiff.

    John Weber for defendants Thomas Man Chung Tao, Pan Pacific
Textile Group, Inc., and Aviat Sportif, Inc.

Goldberg, Senior Judge: This case involves an action by plaintiff the United States (specifically, the United States Customs Service[1] ("**Customs**")) against defendants Pan Pacific Textile Group, Inc. ("**Pan Pacific**"), Aviat Sportif, Inc. ("**Aviat Sportif**"), Budget Transport, Inc., Prime International Agency, Billion Sales, Ever Power Corp., American Contractors Indemnity Company ("**ACIC**"),[2] Thomas Man Chung Tao ("**Tao**"), and Stephen Yu Juang ("**Juang**"),[3] regarding 68 unlawful entries of track suits imported from the People's Republic of China ("**China**") into the United States.  Customs moves for partial summary judgment against Tao, Pan Pacific, and Aviat Sportif (collectively, "**defendants**") pursuant to USCIT Rule 56, seeking the recovery of (1) unpaid duties under 19 U.S.C. § 1592(d) based on alternative theories of fraud, gross negligence, or negligence and (2) a

---

[1] The United States Customs Service is now U.S. Customs and Border Protection per the Homeland Security Act of 2002, 6 U.S.C. § 542 (2005), and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108-32, at 4 (2003).

[2] ACIC entered into a settlement agreement whereby Customs dismissed its claims against ACIC in exchange for payment of $201,000.  Plaintiff's Motion for Partial Summary Judgment ("**Pl.'s Mot.**") at 10.  As such, ACIC is no longer at issue in this case.

[3] Juang was the owner of Prime International Agency, Budget Transport, Inc., Ever Power Corp., and Billion Sales. Plaintiff's Proposed Findings of Uncontroverted Fact ("**PPFUF**") ¶¶ 3-4.  The Court entered default judgment against these parties on June 15, 2004.  Pl.'s Mot. at 9.  As such, they are no longer at issue in this case.

civil penalty under 19 U.S.C. § 1592(b) based on alternative theories of gross negligence or negligence. Defendants also move for partial summary judgment pursuant to USCIT Rule 56, contending that Customs cannot prove scienter for purposes of establishing liability for a civil penalty under a fraud theory. The Court has consolidated these motions for purposes of this opinion.

## I. BACKGROUND

In accordance with USCIT Rule 56(d), the Court begins with a recitation of the relevant facts which appear to be without substantial controversy. During the events at issue in this case, Tao was an importer dealing almost exclusively in tracksuits manufactured in China. PPFUF ¶ 2. To do business in the United States, Tao acted through two companies, Pan Pacific and Aviat Sportif, which were owned and controlled by Tao. PPFUF ¶ 2. In 1993, Tao and his companies engaged the freight forwarding services of Juang, who operated several companies providing cargo transportation between the United States and China. PPFUF ¶ 12. Later that same year, Juang proposed to expand the scope of the services he provided to Tao. PPFUF ¶ 12. Juang offered to provide both freight forwarding and customs clearance services on Tao's shipments, although he was not a

licensed customs broker.[4]  PPFUF ¶ 12.  Tao accepted Juang's offer, and signed a power of attorney allowing Juang to conduct customs entry transactions on behalf of Tao and his companies. PPFUF ¶ 14.  Tao (or one of his companies) remained the importer of record for approximately one year after Juang began performing customs clearance services.  PPFUF ¶ 15.

Upon acquiring these new customs clearance responsibilities, Juang began submitting entry documents to Customs that misdescribed the tracksuits as plastic bags and wooden patio furniture — classifications which carried lesser duty rates[5] and were not subject to quota restrictions.[6]  PPFUF ¶¶ 17, 19.  He also undervalued the merchandise to further reduce the duties assessed by Customs.  PPFUF ¶¶ 17, 19.  Juang profited from this scheme by continuing to charge Tao according to the proper duty rate.  PPFUF ¶ 20.  To support his charges to Tao, Juang

---

[4] It is a violation of Customs' regulations for a broker to transact customs business without a license.  19 C.F.R. § 111.4 (2005).

[5] See, e.g., HTSUS 3923.21.0090 (1996) (setting 3% tariff for plastic bags); HTSUS 9401.79.0025 (1996) (setting 2.4% tariff for outdoor household furniture sets with metal frames); HTSUS 6211.33.30 (1996) (setting 16.8% tariff for sets of men and boys' tracksuits of man-made fibers).

[6] For the duration of defendants' relationship with Juang, Chinese textiles were subject to quotas and required quota visas for entry into the United States.  See, e.g., Agreement Between the United States and China Concerning Trade in Textile and Apparel Products, U.S.-China, June 8, 1995, Temp. State Dep't No. 95-148, 1995 WL 539718.

supplemented his invoices with accurate entry documents that were never in fact submitted to Customs.  PPFUF ¶ 21.

In 1994, Juang approached Tao with an alternate business arrangement (the **"flat fee scheme"**).  PPFUF ¶ 29.  Juang claimed that Tao had been "paying too much duty" and proposed that Tao pay a flat fee per shipping container that would include all of the costs of shipment, including both freight forwarding and customs duties.  PPFUF ¶ 29.  Further, Juang claimed that Tao would no longer need to separately purchase quota visas.  PPFUF ¶ 31.  Juang suggested that he could instead accomplish this task through a personal connection and include it in his package of services to Tao.  PPFUF ¶ 32.  As part of this arrangement, Juang proposed that he would become the importer of record, although Tao would continue to ultimately receive the goods.  PPFUF ¶ 31. For all of his services under the flat fee scheme, Juang offered to charge a fee that was less than the duties Tao would have otherwise paid.  PPFUF ¶ 29.

Before accepting Juang's proposal, Tao questioned how Juang could make a profit while offering such a reduced flat fee. PPFUF ¶ 33.  Tao consulted with Myron Rosenbach (**"Rosenbach"**), an acquaintance experienced in importing from Asia into the United States, seeking an explanation.  Memorandum in Support of Defendants Pan Pacific Textile Group Inc., Aviat Sportif Inc., and Thomas Man Chung Tao's Motion for Summary Judgment Pursuant

to Rule 56 of the Court of International Trade (**"Defs.' Mot."**) at 8. Rosenbach indicated that it was possible for an importer to reduce duties owed by calculating the duty based on production cost rather than invoice value, and he provided Tao with a copy of a letter from a Customs attorney that supported this theory. Defs.' Mot., Ex. C (Deposition of Myron Rosenbach) (**"Rosenbach Dep."**) at 133-35. This letter had been sent to Rosenbach as a general update on customs law, and was not intended for Tao, or written with any knowledge of his situation. Rosenbach Dep. at 135-36. Two days after this conversation, Tao agreed to the flat fee arrangement, including the designation of Juang as the importer of record. PPFUF ¶ 37. Although Tao stated that he assumed that duties would be calculated based on production costs, Tao never provided these costs to Juang. Pl.'s Mot., App. E (Deposition of Thomas Man-Chung Tao) at 255, 276.

After Tao agreed to the flat fee arrangement, Juang continued to enter Tao's tracksuits as plastic bags and patio furniture, although he stopped providing Tao with falsified entry documents as support for his invoices. PPFUF ¶ 47. Tao stated that he thought it was not necessary for him to maintain copies of his entry records, since he was no longer the importer of record. PPFUF ¶ 41. Tao also told his supplier, Singmay Industrial, Ltd., that it should no longer purchase quota visas, indicating that Juang would take care of this under the new flat

fee scheme.  PPFUF ¶ 43.  Tao stated that, while he perceived a shift in responsibilities once Juang became the importer of record, he still considered himself to be the owner of the merchandise.  PPFUF ¶ 41.  To that end, Tao's companies continued to place the orders for the merchandise, and received the goods directly from Juang's companies after they cleared customs.  PPFUF ¶ 41.  Tao's company, Pan Pacific, also remained the ultimate consignee.  PPFUF ¶ 41.

On or about November 26, 1996, Customs Special Agents began investigating Juang, initially for suspected involvement in the smuggling of Chinese medicine.  Pl.'s Mot. at 7.  On February 26, 1997, Customs searched the premises occupied by Juang's companies.  Pl.'s Mot., App. A (Declaration of David J. Peters) ¶ 5.  Records uncovered during the search revealed that, from late 1993 to early 1997, Juang entered tracksuits for Tao, Pan Pacific, and Aviat Sportif.  Pl.'s Mot., App. B (Declaration of Marcia A. Brown) ("**Brown Decl.**") ¶ 9.  Investigators then searched the premises of Pan Pacific and Aviat Sportif and concluded from the records recovered that Tao's payments to Juang were below the duties that would have been assessed based on the value stated on the commercial invoices.  Brown Decl. ¶ 13.  They also discovered that quota visas had not been obtained and associated charges had not been paid.  Brown Decl. ¶ 12.  As a result of these discoveries, Tao and Juang were criminally

prosecuted for conspiracy to smuggle merchandise into the United States. Pl.'s Mot. at 8. Tao was acquitted, United States v. Tao, CR-98-571-RAP (C.D. Ca. 1999), while Juang pled guilty, agreeing to pay $1.4 million in restitution, United States v. Juang, 98-CR-96-ALL (C.D. Ca. 2001).

On November 21, 2001, Customs filed the instant civil action pursuant to 19 U.S.C. § 1592. Defs.' Mot., Ex. D (Complaint) ("**Compl.**") ¶ 1. In its complaint, Customs sought unpaid duties and a civil penalty for 68 entries of merchandise, including 34 that were at issue in the criminal trial. Compl. ¶¶ 1, 15; Pl.'s Mot. at 9. These entries were made between September 21, 1995 and January 20, 1997, under the flat fee scheme.[7] PPFUF ¶ 1. Customs set the total domestic value of these goods at $26,051,129, and claimed that $2,034,159.80 in duties remained unpaid.[8] Compl. ¶¶ 22, 28. In its complaint, Customs sought the recovery of both unpaid duties and a civil penalty under the three alternative theories of liability recognized by 19 U.S.C. § 1592 (i.e., fraud, gross negligence, or negligence). Compl. ¶¶ 28, 31, 34, 37, 40, 43, 44. Under a theory of fraud liability,

---

[7] Customs did not seek unpaid duties or a civil penalty for the fraudulent entries made by Juang prior to the flat fee scheme. Reply to Defendants' Opposition to Motion for Partial Summary Judgment at 12.

[8] Defendants dispute both the valuation of the merchandise and the calculation of duties owed. Defendants' Response to Plaintiff's Rule 56(h) Statement ("**Defs.' Resp. to PPFUF**") ¶ 59.

Customs sought the full amount of unpaid duties, as well as a

$26,051,129 civil penalty.  Compl. ¶¶ 28, 37.  Alternatively,

Customs sought $241,351 in unpaid duties[9] and a $956,406 civil

penalty under a gross negligence theory or a $482,703 civil

penalty under a negligence theory.  Compl. ¶¶ 31, 34, 38, 40.

On October 31, 2002, defendants moved for summary judgment

on four separate grounds, all of which were denied by this Court.

United States v. Pan Pac. Textile Group, Inc., 27 CIT __, 276 F.

Supp. 2d 1316 (2003).  The instant motions for partial summary

judgment on different grounds followed.  The Court has

jurisdiction over this action pursuant to 19 U.S.C. § 1582.

## II. STANDARD OF REVIEW

"[S]ummary judgment is proper 'if the pleadings [and the

discovery materials] show that there is no genuine issue as to

any material fact and that the moving party is entitled to a

judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477

---

[9] Customs sought a lesser amount of duties under the theories of
gross negligence and negligence because the applicable statute of
limitations limited recovery of duties from grossly negligent or
negligent violations to only those violations committed within
five years of the action.  19 U.S.C. § 1621(1) (2005).  Invoking
an exception to this statute of limitations for cases of fraud,
Customs sought additional duties for violations occurring within
five years of the discovery of the fraud.  19 U.S.C. § 1621(1)
(2005).

U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).[10]  However, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, all reasonable inferences should be drawn in favor of the nonmoving party.  See United States v. Neman, 16 CIT 97, 98, 784 F. Supp. 897, 897-98 (1992).

Even where summary judgment cannot be rendered upon the whole case, partial summary judgment may be granted in some circumstances.  See USCIT R. 56(d).  "Partial summary judgment is appropriate 'when it appears that some aspects of a claim are not genuinely controvertible [and] . . . genuine issues remain regarding the rest of the claim.'"  Ugg Int'l, Inc. v. United States, 17 CIT 79, 83, 813 F. Supp. 848, 852 (1993) (quoting Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure § 5.19, at 273-74 (3d ed. 1985) (footnotes omitted)).

The fact that state of mind is at issue in a case does not preclude summary judgment.  See Liberty Lobby, 477 U.S. at 256.

_____

[10] "When the Court's rules are materially the same as the [Federal Rules of Civil Procedure ("**FRCP**")], the Court has found it appropriate to consider decisions and commentary on the FRCP in interpreting its own rules."  Former Employees of Tyco Elec. v. United States Dep't of Labor, 27 CIT ___, ___, 259 F. Supp. 2d 1246, 1251 (2003) (citation omitted).

"[T]here are many instances in the law where the evidence of state of mind is so unequivocal that summary judgment is proper and, indeed, expressly mandated by Rule 56." Piamba Cortes v. Amer. Airlines, Inc., 177 F.3d 1272, 1292 n.14 (11th Cir. 1999) (quoting In re Air Crash Near Cali, 985 F. Supp. 1106, 1124 (S.D. Fla. 1997)). Even "[p]otential issues of fact as to . . . state of mind . . . do not prevent summary judgment" where the facts "lead to only one legal conclusion." Executone Info. Sys. v. United States, 19 CIT 960, 965, 896 F. Supp. 1235, 1239 (1995), aff'd, 96 F.3d 1383 (Fed. Cir. 1996).

### III. DISCUSSION

### A. DEFENDANTS ARE LIABLE FOR DUTIES UNPAID DUE TO THE FRAUDULENT VIOLATIONS OF 19 U.S.C. § 1592 BY THEIR AGENT

On summary judgment, Customs first seeks recovery from defendants of the unpaid duties associated with the entries at issue in this case. Customs has presented two alternative arguments supporting defendants' liability for duties unpaid due to fraudulent violations of 19 U.S.C. § 1592. Customs first argues that Juang was serving as defendants' agent, making defendants liable, as principals, for the duties that remain unpaid as a result of Juang's fraud. Customs' second argument is that Tao himself (and by extension, Tao's companies) committed fraud under the statute. Customs argues that Tao deliberately avoided knowledge of Juang's unlawful activities, which served as constructive knowledge sufficient to make Tao (and Tao's

companies) complicit in the fraud. Further, because the statutory scheme also prohibits violations of 19 U.S.C. § 1592 due to gross negligence or negligence, Customs has presented alternative arguments supporting defendants' liability for unpaid duties under these lesser theories of liability as well.

For the reasons that follow, the Court finds defendants liable for unpaid duties on the entries at issue in this case. The Court concludes that, as a matter of law, a principal may be held liable under the fraud provisions of 19 U.S.C. § 1592 for a customs violation committed by an agent acting within its proper scope of authority, regardless of whether the principal authorized the agent's specific unlawful conduct constituting the customs violation. Because the uncontroverted facts in this case clearly demonstrate that Juang committed customs violations in the performance of his duties as defendants' agent, defendants are liable as principals for duties unpaid as a result of Juang's fraud.[11]

### 1. Juang's Actions Constituted a Fraudulent Violation of 19 U.S.C. § 1592(a)

As a threshold matter, in order for liability for unpaid

---

[11] As such, for purposes of the analysis of liability for unpaid duties, the Court need not reach Customs' second argument regarding defendants' complicity in fraud through deliberate ignorance. Similarly, the Court need not reach Customs' arguments concerning gross negligence and negligence, as duties owed under these lesser theories of liability are subsumed by those owed under fraud.

duties to accrue under 19 U.S.C. § 1592(d), a violation of 19 U.S.C. § 1592(a) must have been committed through either fraud, gross negligence, or negligence.  A fraudulent violation under 19 U.S.C. § 1592(a) is committed directly[12] when four key elements are present: first, the party against whom liability is sought must belong to the class of "persons" subject to liability under the statute; second, that party must enter, introduce, or attempt to enter or introduce merchandise into the United States by means of false documents or acts; third, such documents or acts must also be material; and fourth, the material, false documents or acts must be transmitted or performed fraudulently.[13]  19 U.S.C. § 1592(a)(1)(A)(i) (1999).  All four elements are easily met in this case.

First, Juang, as importer of record, was clearly a "person" within the meaning of 19 U.S.C. § 1592(a) and, as such, may be held liable for a violation of that statute.  This Court has repeatedly held that an importer of record belongs to the class of "persons" subject to liability under 19 U.S.C. § 1592(a) and against whom a claim may be brought for suspect entries.  See, e.g., United States v. F.H. Fenderson, Inc., 11 CIT 199, 658 F.

---

[12] The statute also prohibits the aiding and abetting of customs violations.  19 U.S.C. § 1592(a)(1)(B) (1999).

[13] An alleged violation involving a material omission need not satisfy the second requirement concerning falsity.  19 U.S.C. § 1592(a)(1)(A)(ii) (1999).

Supp. 894 (1987).  It is uncontested that Juang was the importer

of record for the shipments at issue and he is therefore a

"person" subject to liability under the statute.[14]

Next, the facts also show that Juang submitted documents to

Customs containing information that was both false and material

within the meaning of 19 U.S.C. § 1592(a).  Juang submitted entry

documents to Customs which identified Tao's merchandise as

plastic bags or wooden patio furniture.  There is no doubt that

these identifications were false, as all parties acknowledge that

the shipments contained tracksuits.  Further, these false

statements were also material.  The definition of "material"

under 19 U.S.C. § 1592 is provided by 19 C.F.R. pt. 171 app.

B(B):

> A document, statement, act, or omission is material if it
> has the natural tendency to influence or is capable of
> influencing agency action including, but not limited to a
> Customs action regarding: (1) Determination of the
> classification, appraisement, or admissibility of
> merchandise (e.g., whether merchandise is prohibited or
> restricted); (2) determination of an importer's liability
> for duty . . . .

19 C.F.R. pt. 171 app. B(B)(1)-(2) (2005).  In the instant case,

Juang's actions satisfy this definition on multiple counts.  The

documents submitted to Customs contained false statements which

---

[14] There is also support for the proposition that anyone in a
position to satisfy the other elements of a 19 U.S.C. § 1592(a)
violation is a "person" within the meaning of the statute,
regardless of any other legal status they might hold.  See United
States v. Golden Ship Trading, 22 CIT 950, 953 (1998) ("One who
violates the statute is always liable whether or not the importer
of record.").

affected Customs' determination of the classification, appraisement, and admissibility of the merchandise, as well as the calculation of the duty. Juang's entry documents falsely led Customs to believe that the tracksuits being imported fell under the classifications associated with plastic bags or wooden patio furniture. These erroneous classifications consequently affected Customs' determination of admissibility as well. While the actual merchandise was subject to quota, the classifications indicated were not, enabling Juang to avoid the quota. Since no quota visas were obtained, Customs was falsely led to believe that the shipments were admissible. Juang further misled Customs by providing a false appraisement of the value of the merchandise, declaring a value lower than the actual value of the goods. Further, since the duty rate on plastic bags and wooden patio furniture was less than that for tracksuits at the time of the shipments at issue, Juang's misstatements resulted in an inaccurate determination of duty liability. Collectively, these deceptions caused Customs to assess significantly lower duties on the merchandise entered by Juang. Thus, Juang's actions satisfied each of the alternative tests for "materiality" under Customs' regulation. See also United States v. Rockwell Int'l Corp., 10 CIT 38, 42, 628 F. Supp. 206, 210 (1986) (holding that the determination of the materiality of a false statement is properly made based on its impact on Customs' determination of

the correct duty).

Finally, it is clear that Juang fraudulently submitted the material, false entry documents to Customs. Customs' regulations deem a violation of 19 U.S.C. § 1592 to be fraudulent when "a material false statement, omission, or act in connection with the transaction was committed (or omitted) knowingly, i.e., was done voluntarily and intentionally, as established by clear and convincing evidence." 19 C.F.R. pt. 171 app. B(C)(3) (2005). In the instant case, Juang has admitted to knowingly submitting false statements to Customs. Pl.'s Mot., App. F (Deposition of Stephen Juang) ("**Juang Dep.**") at 41-43. Further, defendants, in their own submissions to the Court, have acknowledged that Juang committed fraud through his customs transactions. Defs.' Mot. at 9. It is thus firmly established by uncontroverted facts that Juang committed fraud, and in so doing, violated 19 U.S.C. § 1592(a). These violations created liability for unpaid duties under 19 U.S.C. § 1592(d).

### 2. Juang Was Defendants' Agent

In order for any liability for Juang's actions to transfer to defendants under agency principles, it must be shown that Juang was defendants' agent. In the instant case, the uncontroverted facts firmly establish that defendants engaged Juang as their agent. Agency is defined as "the fiduciary relation which results from the manifestation of consent by one

person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1(1) (1958) (the "**Restatement of Agency**"). It is undisputed that Tao engaged Juang to perform customs entry services on behalf of defendants, and that Juang consented to this arrangement. Tao formalized the agency relationship by signing a power of attorney, a document specifically designed to create an agency relationship. See, e.g., Black's Law Dictionary 1191 (7th ed. 1999) (defining "power of attorney" as "[a]n instrument granting someone authority to act as agent or attorney-in-fact for the grantor"). Further, Tao hired Juang to perform the role of a customs broker on behalf of defendants, a role that courts have recognized as that of an agent. See United States v. Fed. Ins. Co., 805 F.2d 1012, 1013 (Fed. Cir. 1986); United States v. Yip, 930 F.2d 142, 144 (2d Cir. 1991). The responsibilities delegated by Tao and accepted by Juang clearly constituted the basis of an agency relationship between Juang and defendants.

The fact that Juang became the importer of record did not alter the nature of his agency relationship with defendants. Several cases, before this Court and others, have confirmed that the importer of record may also be an agent in the context of the customs transactions he or she is performing. See, e.g., Corrigan v. United States, 35 C.C.P.A. 10, 17-18 (C.C.P.A. 1947)

("While . . . a customs broker may make entry . . . in his own name, . . . he does so as the agent of the owner.") (citations omitted); Trans-Border Customs Servs. v. United States, 18 CIT 22, 23, 843 F. Supp. 1482, 1483 (1994) ("Trans-Border is the importer of record and the customs broker acting as agent . . . ."), aff'd, 76 F.3d 354 (Fed. Cir. 1996); Detroit Zoological Soc'y v. United States, 10 CIT 133, 140, 630 F. Supp. 1350, 1358 (1986) ("Plaintiff seems to acknowledge in its complaint that the importer of record here is an 'agent' of plaintiff-consignee . . . ."); Hammerstein v. United States, 27 Cust. Ct. 147, 150 (1951) (identifying the plaintiff as an "agent" and the "importer of record"); Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 51 F. Supp. 2d 457, 473 (S.D.N.Y. 1999) ("Hansa technically was 'importer of record' acting on behalf of the actual importer, Duferco USA.").

In the instant case, it is clear that Juang continued to function as an agent for defendants, even after Juang became the importer of record. Defendants placed the orders for merchandise prior to importation, and received the goods directly from Juang's companies after they cleared Customs. Further, Tao intended to retain ownership of the merchandise throughout this process and, to that end, Pan Pacific remained the ultimate consignee. There can be no reasonable doubt that Juang was handling the goods on defendants' behalf, regardless of how he

may have deviated from the proper performance of his duties. Despite the transfer of importer of record status, Juang remained defendants' agent during the flat fee scheme.

### 3.   Defendants Are Liable for the Customs Violations Committed by their Agent Within the Scope of that Agent's Authority

It is well established under the agency principle of imputation that defendants, as principals, may be held liable by a third party for the authorized acts of Juang, as their agent. See Restatement of Agency § 140 ("The liability of the principal to a third person upon a transaction conducted by an agent, or the transfer of his interests by an agent, may be based upon the fact that: (a) the agent was authorized; [or] (b) apparently authorized . . . ."). An agent is authorized if he acts "in accordance with the principal's manifestations of consent to him." Restatement of Agency § 7. In the instant case, Tao unambiguously consented to Juang filing entry documents on defendants' behalf when he retained Juang's customs clearance services and signed a power of attorney. Thus, liability for Juang's customs transactions may be extended to defendants.

It is irrelevant whether or not defendants authorized the specific unlawful conduct which constituted the violation of 19 U.S.C. § 1592(a). In Gleason v. Seaboard A. L. R. Co., 278 U.S. 349 (1929), the United States Supreme Court (the "**Supreme Court**") noted that "few doctrines of the law are more firmly established

or more in harmony with accepted notions of social policy than that of the liability of the principal without fault of his own." Id., 278 U.S. at 356 (citations omitted); see also Restatement of Agency § 216 ("A master or other principal may be liable to another whose interests have been invaded by the tortious conduct of a servant or other agent, although the principal does not personally violate a duty to such other or authorize the conduct of the agent causing the invasion."). Even if Juang had ignored instructions from defendants to the contrary, defendants may still be held liable for Juang's unlawful actions, since those actions were within the scope of the duties that Juang had been authorized to perform. See Hoover v. Wise, 91 U.S. 308, 311 (1876) ("[T]he principal is . . . liable in a civil suit if the [agent's] fraud be committed in the transaction of the very business in which the agent was appointed to act.") (citations omitted). It is clear that misrepresentations, including fraud, fall within the category of unlawful acts contemplated under these principles of agency liability. See, e.g., Restatement of Agency § 261 ("A principal who puts a[n] . . . agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."). Even if Juang was acting entirely for his own purposes, defendants remain liable. In the Gleason case, the Supreme Court noted with regard

to agency liability that "there would seem to be no more reason for creating an exception . . . because of the agent's secret purpose to benefit himself . . . than in any other case where his default is actuated by negligence or sinister motives." Gleason, 278 U.S. at 357; see also Restatement of Agency § 262 ("A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him is not relieved from liability by the fact that the . . . agent acts entirely for his own purposes . . . .").

Nevertheless, defendants claim that they cannot be found liable due to the "adverse interest exception" to this principle of agency liability.  This exception absolves a principal of liability "when an agent abandons his principal's interests and acts entirely for his or another's purposes."  In Re Crazy Eddie Sec. Litig., 802 F. Supp. 804, 817 (E.D.N.Y. 1992) (citation omitted).  The exception does not apply, however, when  "the unfaithful agent's . . . conduct, while motivated by improper self-serving reasons, also benefit [sic] the . . . principal."  In re Drexel Burnham Lambert Group, Inc., 148 B.R. 1002, 1005 n.2 (S.D.N.Y. 1993) (citation omitted).  In the instant case, defendants do not qualify for the exception, since they benefitted from Juang's fraud.  The flat rate that Juang charged for the shipments at issue was a reduction relative to the duties defendants would have paid.  In addition, under the flat fee

scheme, defendants no longer purchased quota visas for shipments to the United States.  Defendants argue that these savings could also have been obtained through legitimate means,[15] but this is irrelevant.  The savings Juang achieved through his fraud were passed on to defendants.  The reception of this benefit forecloses use of the adverse interest exception, regardless of any alternate explanation of the benefit which hypothetically might exist.  Since defendants do not satisfy the exception's most basic requirements, the Court does not further consider its applicability to this case.

To be sure, the instant case appears to be the first time this Court has applied agency liability to customs violations in precisely this manner,[16] but the agency principles employed herein are firmly established.  For example, Gleason demonstrates

---

[15] Defendants claim that court holdings, including Synergy Sport Int'l v. United States, 17 CIT 18 (1993) and Nissho Iwai Am. Corp. v. United States, 982 F.2d 505 (Fed. Cir. 1992), indicate that duties can properly be derived from production value, producing a significant savings when compared to similar calculations using invoice value.  Defs.' Resp. to PPFUF ¶¶ 36, 38.  Defendants contend that this alternative method could produce similar savings to those received under the flat fee scheme.  Defs.' Opp'n at 11.

[16] The novelty of this case is probably due to the unusual nature of the business arrangement under the flat fee scheme.  In most customs transactions involving a broker, the principal remains the importer of record and, as such, is made explicitly liable by Customs' regulations.  See 19 C.F.R. § 111.29(b)(1) ("If you are the importer of record, payment to the broker will not relieve you of liability for Customs charges (duties, taxes, or other debts owed Customs) in the event the charges are not paid by the broker.").

a closely analogous application of these principles by the Supreme Court.  <u>Gleason</u> involved a fraudulent scheme by an employee of a railroad company to defraud a cotton merchant. <u>Gleason</u>, 278 U.S. at 352-53.  Unbeknownst to the railroad company, the employee submitted a fraudulent invoice and bill of lading to the merchant's bank in order to receive payment for a fictitious shipment of cotton.  <u>Id.</u>  Despite the railroad company's ignorance of the scheme and the fact that it was performed solely for the employee's own benefit, the Supreme Court held the railroad company liable for the losses resulting from the fraud.  <u>Id.</u> at 357.  Although the instant case deals instead with customs violations, the theory of defendants' liability is essentially the same as the railroad company's: a principal is liable for a fraud made possible by the responsibilities delegated to an agent, even if the agent acts independently in motive and execution.

**4.    Sound Public Policy Supports Application of Agency Principles to Fraudulent Violations of 19 U.S.C. § 1592**

Assigning liability to defendants for Juang's fraudulent violations of 19 U.S.C. § 1592 is also supported by sound public policy.  The policy underlying the agency principle of imputation, at the most basic level, is "to protect innocent third parties or . . . to prevent principals from benefitting at the expense of innocent third parties."  <u>Bankers Life Ins. Co. of Neb. v. Scurlock Oil Co.</u>, 447 F.2d 997, 1005 (5th Cir. 1971).  In

this vein, the United States Court of Appeals for the Federal Circuit has previously indicated that, rather than force the government (as third party) to bear the loss resulting from unpaid duties, it is preferable to extend liability for unpaid duties to an innocent party who is nonetheless "traditionally liable" for such payment. United States v. Blum, 858 F.2d 1566, 1570 (Fed. Cir. 1988).[17] As such, extending liability to defendants in this case achieves the public policy goals underlying both traditional agency principles and the Blum court's reasoning.

Further, the Court's holding in this case serves an additional public policy interest by creating proper incentives for importers in the future. If the Court were to allow defendants to immunize themselves from liability for customs violations by hiring a customs broker and transferring importer of record status, the Court would effectively create an incentive for bad behavior. Allowing such protection for importers would discourage care on their part in selecting their agents, and

---

[17] To be clear, Customs does not argue (the Court believes rightly) that this case satisfies the requirements of Blum, which permits the assignment of liability for unpaid duties under 19 U.S.C. § 1592 to any party "traditionally liable for such duties[.]" Blum, 858 F.2d at 1570. The unusual business arrangement under the flat fee scheme, involving transfer of importer of record status, appears to preclude direct application of Blum to this case. See Customs Directive 4400-09 (Feb. 6, 1989) (indicating that demands for unpaid duties under 19 U.S.C. § 1592 are traditionally made only to violators, importers of record, and sureties).

would thus provide more opportunity for dishonest middlemen such as Juang. Moreover, if importers could lower their costs through unlawful customs transactions without incurring any liability, they would be encouraged to seek brokers willing to commit fraud on their behalf (this case demonstrates that it is possible for both parties to benefit from such an arrangement). In the Court's view, the likely effect of denying liability in this case would be an increase in fraudulent customs transactions. Therefore, the Court concludes that extending liability to defendants for duties unpaid as a result of Juang's fraud is not only well supported by law, but also sound public policy. See TIE Commc'n, Inc. v. United States, 18 CIT 358, 366 (1994) (weighing public policy concerns to arrive at disposition in customs case).

* * *

Accordingly, the Court concludes that defendants are liable for the duties unpaid as a result of Juang's fraudulent violations of 19 U.S.C. § 1592.

**B.  SUMMARY JUDGMENT CANNOT BE GRANTED ON THE ISSUE OF LIABILITY FOR A CIVIL PENALTY UNDER 19 U.S.C. § 1592**

On summary judgment, Customs makes two alternative claims for the assignment of liability to defendants for a civil penalty under 19 U.S.C. § 1592. Customs first argues that a civil penalty is warranted because defendants were complicit in the false entry of the merchandise at issue through gross negligence,

in violation of 19 U.S.C. § 1592(a).[18]  In the alternative,

Customs argues that, at a minimum, defendants' role in the flat

fee scheme constituted a negligent violation of 19 U.S.C. §

1592(a) deserving of a civil penalty.[19, 20]  Under either theory,

Customs requests that the Court assign liability to defendants

for a penalty in accordance with 19 U.S.C. § 1592.[21]

     Defendants, in turn, request summary judgment on Count 1 of

the complaint, in which Customs seeks a civil penalty based on

allegations that defendants were complicit in the false entry of

the merchandise at issue through fraud.[22]  Defendants claim that

Customs has failed to provide any evidence of scienter on the

_____

[18] Customs' regulations provide that gross negligence is the
"actual knowledge of or wanton disregard for the relevant facts .
. . with indifference to or disregard for the offender's
obligations under the statute."  19 C.F.R. pt. 171, app. B(C)(2)
(2005).

[19] Customs' regulations provide that "a violation is negligent if
it results from failure to exercise reasonable care and
competence . . . ."  19 C.F.R. pt. 171, app. B(C)(1) (2005).

[20] In its complaint, Customs claimed that defendants committed
fraudulent violations of 19 U.S.C. § 1592(a) for the purpose of
recovering both unpaid duties and a civil penalty.  However, on
summary judgment, Customs does not request that penalty liability
be assigned to defendants under a fraud theory.

[21] The penalty amount differs under each theory of liability.
See 19 U.S.C. § 1592(c)(1999).

[22] As indicated supra, at III.A, Customs' regulations provide
that a violation of 19 U.S.C. § 1592 is fraudulent "if a material
false statement, omission, or act in connection with the
transaction was committed (or omitted) knowingly, i.e., was done
voluntarily and intentionally, as established by clear and
convincing evidence."  19 C.F.R. pt. 171, app. B(C)(3) (2005).

part of defendants, and thus cannot support its claim for a penalty based on fraud under 19 U.S.C. § 1592(c). Defendants request that the Court deny such a penalty on summary judgment.

For the reasons that follow, the Court concludes that it is unable to grant summary judgment for either party on the issue of a civil penalty under any theory of defendants' liability. Although the Court finds that defendants are at least <u>eligible</u> for the assignment of liability for a civil penalty under 19 U.S.C. § 1592, defendants' direct culpability in the flat fee scheme (and thus degree of liability) is a contested factual question which, in the Court's view, is more appropriate for resolution at trial.

**1. Defendants Are Eligible for the Assessment of a Civil Penalty Under 19 U.S.C. § 1592**

Like liability for unpaid duties, liability for a civil penalty accrues under 19 U.S.C. § 1592 when a violation of 19 U.S.C. § 1592(a) is committed through either fraud, gross negligence, or negligence. 19 U.S.C. § 1592(c). The Court applies the same four-part test derived from 19 U.S.C. § 1592(a) to determine whether such a violation has been committed for purposes of affixing liability for both unpaid duties and a civil

penalty.[23]  Here, it is already firmly established that

information submitted on behalf of defendants to Customs was both

false and material.  See supra, at III.A.1.  Thus, for a customs

violation to exist and penalty liability to thereby accrue to

defendants, it need only be determined that: (1) defendants

belong to the class of "persons" subject to liability under 19

U.S.C. § 1592 and (2) defendants' conduct in connection with the

false, material submissions to Customs constituted fraud, gross

negligence, or negligence.[24]

As an initial matter, it is clear that defendants are

"persons" subject to liability within the meaning of 19 U.S.C. §

1592(a), i.e., they are at least eligible for the assessment of a

civil penalty.  This Court has previously held

that "neither the statute nor the regulations limit liability for

---

[23] Although the same test is applied, a claim for recovery of
unpaid duties is independent of (and analyzed separately from) a
claim for assessment of a civil penalty.  Under 19 U.S.C. § 1592,
a defendant may be required to restore unpaid duties to the
government without payment of a penalty; likewise, a defendant
may be required to pay a penalty for a customs violation not
resulting in unpaid duties to the government.  See, e.g., Blum,
858 F.2d at 1569; United States v. Snuggles, Inc., 20 CIT 1057,
1060, 937 F.Supp. 923, 926 (1996); United States v. Gordon, 10
CIT 292, 297, 634 F. Supp. 409, 415 (1986).

[24] These two parts of the statutory test remain open at this
stage of analysis because Customs does not seek (the Court
believes rightly) a civil penalty under a fraud theory on summary
judgment.  The Court is precluded from considering an extension
of the agency principles discussed supra, at III.A, to satisfy
the statutory requirements for the assignment of penalty
liability under 19 U.S.C. § 1592 because this remedy was not
requested by Customs.

customs penalties to the 'importer of record.'" <u>United States v.</u>
<u>KAB Trade Co.</u>, 21 CIT 297, 300 (1997); <u>see also</u> <u>United States v.</u>
<u>Action Prods. Int'l, Inc.</u>, 25 CIT 139, 142 (2001) ("Defendant's
contention that it cannot be held liable for a violation of 19
U.S.C. § 1592 because it is not the importer of record is
supported by neither the statute nor case law."). Indeed, the
current language of the statute is intended "to encompass all of
the potential violators listed in the prior version [of the
statute]." <u>Action Prods.</u>, 25 CIT at 142 (citing H.R. Rep. No.
95-621, at 12 (1977)). "This list included 'any consignor,
seller, owner, importer, consignee, agent or other person or
persons.'" <u>Id.</u> (citing <u>United States v. Appendagez, Inc.</u>, 5 CIT
74, 80, 560 F. Supp. 50, 55 (1983) (citing 19 U.S.C. § 1592
(1976))). Since the uncontroverted facts establish that, at all
relevant times, Tao, Pan Pacific, and/or Aviat Sportif served as
ultimate consignee (and likely also owner and importer) of the
suspect entries, defendants are "persons" under 19 U.S.C. § 1592
who may be assessed a civil penalty if shown to have violated the
statute through fraud, gross negligence, or negligence.

   2.  **Disputes of Material Fact Regarding Defendants' Direct
       Culpability Preclude Establishing Defendants' Liability
       for a Civil Penalty on Summary Judgment**

   Although defendants are eligible as a matter of law for the
assessment of a civil penalty under 19 U.S.C. § 1592, defendants'
direct culpability (and thus degree of liability under a fraud,

gross negligence, or negligence theory) is a contested question of fact inappropriate for summary judgment in this case.

Turning first to the fraud theory of penalty liability, the relevant facts are sufficiently disputed to prevent the Court from granting partial summary judgment in favor of defendants. Defendants urge the Court that they are entitled to judgment as a matter of law concerning their penalty liability for fraud because, in their view, Customs has failed to produce any direct evidence of defendants' knowledge of the customs violations committed under the flat fee scheme. Rather, defendants argue that the uncontroverted direct evidence demonstrates their absolute lack of knowledge. In support of this position, defendants note that Tao has consistently denied any knowledge of the customs violations committed under the flat fee scheme. Defs.' Mot. at 2, 7-8. Defendants also point to statements by Juang and his employee, Chien Kuo Chen, indicating that they did not disclose the customs violations to defendants. See Juang Dep. at 45; Deposition of Chien Kuo Chen, dated March 17, 2004 at 43-44. Finally, defendants claim that they have introduced evidence indicating that there were rational explanations for why defendants did not suspect criminality in connection with the flat fee scheme. See Rosenbach Dep. at 185-91.

While this evidence does weigh in defendants' favor, it is insufficient to warrant summary judgment for defendants on the

issue of penalty liability for fraudulent customs violations.  In order to prove fraud under 19 U.S.C. § 1592, Customs must establish by "clear and convincing evidence" that defendants "knowingly" committed a customs violation or an act in connection therewith.  19 C.F.R. pt. 171 app. B(C)(3) (2005).  To satisfy this standard, Customs need not present <u>direct</u> evidence of defendants' knowing participation in the customs violations.  Rather, courts have repeatedly found that, in the fraud context, the clear and convincing evidence standard may be satisfied by circumstantial evidence.  <u>See, e.g.</u>, <u>Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.</u>, 375 F.3d 1341, 1360 (Fed. Cir. 2004) (finding fraud on the basis of "clear and convincing circumstantial evidence").  The rationale for this rule is clear: "[i]t is seldom that a fraud or conspiracy to cheat can be proved in any other way than by circumstantial evidence."  <u>Thompson v. Bowie</u>, 71 U.S. 463, 473 (1866); <u>see also</u> <u>Herman & MacLean v. Huddleston</u>, 459 U.S. 375, 390 n.30 (1982) (noting that "the proof of scienter required in fraud cases is often a matter of inference from circumstantial evidence").  In this light, when all reasonable inferences are drawn in favor of Customs, there is sufficient circumstantial evidence for a reasonable trier of fact to infer defendants' knowing participation in the customs violations at issue.  This evidence includes (but is not limited to): the unusual nature of the flat fee scheme (including the

reduction in costs and the lack of quota visas); Tao's decision
not to directly inquire into the mechanics of the scheme with
Juang; and changes in defendants' own business practices
(including accepting invoices without supporting documentation
and ceasing to keep proper records).  Admittedly, this evidence
is fairly countered by the evidence proffered by defendants; but,
this only demonstrates the existence of a dispute concerning the
material fact of defendants' knowledge of the customs violations.
Such a dispute is more appropriately resolved at trial where, for
example, the credibility of defendants' various witnesses may be
tested.  Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285
F.3d 1353, 1362 (Fed. Cir. 2002) (finding that "summary judgment
is inappropriate where . . . a case may ultimately turn on the
credibility of witnesses) (citing Liberty Lobby, 477 U.S. at
255).

Preservation of the issue of penalty liability for
fraudulent customs violations leaves the Court equally unable to
determine, on summary judgment, defendants' liability under the
alternate theories of gross negligence and negligence urged by
Customs.  Turning to the plain language of the statute, it is
clear that the three alternative theories of liability recognized
by 19 U.S.C. § 1592 are mutually exclusive.  See 19 U.S.C. §
1592(a)(1) (1999) (indicating that a violation may occur "by
fraud, gross negligence or negligence") (emphasis added).

Congress' use of the word "or" indicates that a choice must be made among the three theories; for purposes of determining penalty liability under 19 U.S.C. § 1592, a person who commits a customs violation may not have more than one <u>mens rea</u> at the time of commission.[25]  <u>United States v. Complex Mach. Works Co.</u>, 23 CIT 942, 950 n.14, 83 F. Supp. 2d 1307, 1315 n.14 (1999) (recognizing alternative nature of levels of culpability under 19 U.S.C. § 1592).

The Court will not attempt to issue judgment as a matter of law on either of the lesser theories of liability while fraud remains a possible outcome.  Such an order at this stage of the proceedings would only add confusion later if a judgment imposing greater liability were made at trial.  Instead, it is well within the discretion of this Court to make a threshold determination of eligibility for penalty liability under 19 U.S.C. § 1592 while reserving the issue of actual culpability for trial.  <u>See</u> <u>United States v. Almany</u>, 22 CIT 490, 493 (1998) (holding defendant generally liable for violation of 19 U.S.C. § 1592 and reserving issue of state of mind for later determination).

---

[25] However, when liability for unpaid duties and a civil penalty are both sought in connection with the same customs violation, the Court notes that the end result of these separate liability analyses may be the attribution of two different states of mind to a single person, such as where the agency principle of imputed mens rea is used to establish only one category of liability. See Blum, 858 F.2d at 1570 (recognizing that a party may be "innocent" for purposes of penalty liability but not liability for unpaid duties).

* * *

Accordingly, defendants' and Customs' motions for partial summary judgment on the issue of penalty liability are both denied and the issue of defendants' liability for a civil penalty is reserved for trial.

### IV. CONCLUSION

For the foregoing reasons, the Court grants Customs' motion for partial summary judgment on the issue of defendants' liability for unpaid duties, in an amount to be determined following briefing by both parties.  In addition, the Court denies both parties' motions for partial summary judgment on the issue of defendants' liability for a civil penalty, reserving this issue for trial.  A separate order will be issued accordingly.

**/s/ Richard W. Goldberg**
**Richard W. Goldberg**
**Senior Judge**


**Date:       August 26, 2005**
**            New York, New York**